RUBERTA KARASIK, Plaintiff-Appellant, *v.* CITY OF HIGHLAND PARK *et al.,* Defendants-Appellees.

(No. 70-7;

Second District—November 20, 1970.

Paul Peter Mack, Sidney Karasik, of Chicago, for appellant.

Thomas H. Compere, Berle L. Schwartz, of Highland Park, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff appeals from the judgment of the circuit court confirming the refusal of the Zoning Board of Appeals of Highland Park of a variation to reduce a yard restriction on a corner lot. She had sought the variation to enable her to extend and rebuild an existing porch into an enclosed room. The following plat with the proposed extension superimposed is illustrative:

The lot, zoned residential, meets the width and area requirements of the city zoning ordinance. It is improved with a two-story, single family residence which was built prior to the zoning enactments in question. The principal entrance fronts on Lincolnwood Road, which is also the residence address.

The various yard provisions of the Highland Park Zoning Code, which the parties have cited, include the following:

"Highland Park Zoning Ordinance, Article VII 'C' Single Family Dwelling District Regulation.

Section 7-13. Front yard:

(a) There shall be a front yard having a depth of not less than forty (40) feet. * * *

(c) On a corner lot there shall be a front yard on each street side of such lot, except that the front yard on a side street, may be reduced in depth to the extent necessary to permit a buildable width on said lot of forty (40) feet, providing the depth of said yard shall not be reduced to less than ten (10) feet.

Section 7-14. Side yard:

(a) (With exceptions which are not applicable here) * * * there shall be a side yard on each side of a building having a width of not less than nine (9) feet. * * *.

Section 150.005:

* * * (54) 'Yard, front' means a yard extending across the the front of a lot between the side yard lines, and being the minimum horizontal distance between the street line and the main building or any projection thereof other than projection of the usual step. (55) 'Yard, rear' means a yard extending across the rear of a lot, measured between the side lines, and being the minimum horizontal distance between the rear lot line and the rear of the main building or any projections other than steps. On corner lots the rear yard shall be considered as parallel to the street upon which the lot has its least dimension. On both corner lots and interior lots the rear yard shall in all cases be at the opposite end of the lot from the front yard.

(56) 'Yard, side' means a yard between the main building and

the side line of the lot, and extending from the front line to the rear yard line.

Section 150.040:

(3) On a corner lot there shall be a front yard on each street side of such lot, except that the front yard on the side street may be reduced in depth to the extent necessary to permit a buildable width on said lot of 40 feet, providing the depth of said yard shall not be reduced to less than 10 feet."

(There is no definition of a "side street" or a "main street", as those terms are used in the ordinance.)

Plaintiff first argues that she was unlawfully required to seek a variation because her porch was, in fact, located in her side yard and not in her front yard. She cites authorities which have construed restrictive covenants holding that the fact that a lot is on a corner does not cause it to have two fronts, one on each street (*Turney v. Shriver* (1915), 269 Ill. 164); that the portion of a corner lot which is opposite the rear of the lot and which faces on the street is properly designated as the front of the lot (*Staley v. Mears* (1957), 13 Ill.App.2d 451); and that "front", in general usage, refers to the side in which the main entrance is located (*Rhinehart v. Leitch* (Conn. 1928), 140 Atl. 763).

The City rests its argument upon that portion of sub-paragraph (55) of Section 150.005, *supra*, which reads,

"On corner lots the rear yard shall be considered as parallel to the street upon which the lot has its least dimension. On both corner lots and interior lots the rear yard shall in all cases be at the opposite end of the lot from the front yard".

Thus, the City reasons, the front yard must face on Delta. We believe, however, that a more explicit reference to the legislative intention is found in Section 150.040 and Section 7-13, *supra*, both of which provide that on corner lots there shall be a front yard on each street side of such lot with certain exceptions applicable to the front yard on a side street.

Although the ordinance fails to define the term "side street, we agree with plaintiff that under the circumstances shown by the evidence here, Delta Road must, in reason, be considered the "side street" under the ordinances. However, in view of the requirements that there shall be a front yard on each street side of a corner lot, we cannot conclude, with plaintiff, that the frontage on Delta Road therefore becomes the "side yard".[1]

■■■ Corner lot restrictions are intended to permit an owner to develop

---

[1] Plaintiff, of course, cannot bring herself within the exception stated in this section since her home has a width of more than 40 feet.

his land without undue restriction, but to protect other owners on both streets. (Anderson, *American Law of Zoning*, Section 8.45.) Set back restrictions are subject to rigorous application. (Anderson, *American Law of Zoning*, Section 8.43.) The apparent design of such regulations is to provide uniformity of frontage in the spirit of harmonious city-planning. See *Frank v. Russell* (Neb. 1955), 70 N.W.2d 306, 311.

■■ Viewing the Highland Park Zoning Ordinances with this purpose in mind, the provisions for front yard set-backs on each street side of the corner lot determine the need for plaintiff to seek a variation here. A contrary interpretation would permit plaintiff, or any property owner similarly situated, to build within 9 feet of one side line of a corner lot and thus effectively destroy any reasonable minimum set back standards at block ends.

■■ We must also reject plaintiff's argument that the city set back ordinance may not be given retroactive effect as to pre-existing buildings. A valid exercise of the police power can be made to apply and does apply to existing properties. *Village of Oak Park v. Hepler* (1958), 13 Ill.2d 360, 362.

We are also of the opinion that the trial judge correctly ruled that plaintiff had not made a case under Section 150.165 [2] of the Highland Park Ordinance which generally authorizes variations which are in harmony with the general purpose of the zoning code when the Zoning Board of Appeals is satisfied that strict application imposes "practical difficulties or particular hardship" upon an owner, amounting to "prac-

---

[2] Section 150.165:

"(D) When a property owner shows that a strict application of the terms of this chapter relating to the use, construction, or alteration of buildings or structures, or to the use of land, imposes upon him practical difficulties or particular hardship, then the board may make such variations of the strict application of the terms of this chapter as are in harmony with its general purpose and intent when the board is satisfied, under the evidence heard before it, that a granting of such variation will not merely serve as a convenience to the applicant, but is necessary to alleviate some demonstrable hardship or difficulty so great as to warrant a variation in the following instances: * * *.

(4) To make a variance where, by reason of an exceptional situation, surroundings, or condition of a specific piece of property, or by reason of exceptional narrowness, shallowness or shape of a specific piece of property of record, or by reason of exceptional topographical conditions the strict application of any provision of this chapter would result in peculiar and exceptional practical difficulties or particular hardship upon the owner of such property and amount to a practical confiscation of property, as distinguished from a mere inconvenience to such owner, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the general purpose and intent of the comprehensive plan as established by the regulations and provisions contained in this chapter."

tical confiscation of property, as distinguished from a mere inconvenience to such owner".

■■■ Judicial review of the action of the Highland Park Zoning Board of Appeals is limited by the rule that the action of the administrative agency may be reversed only if it is contrary to the manifest weight of the evidence. If there is substantial competent evidence to support its action, the court will not disturb the decision of such board. (Ill. Rev. Stat. 1969, ch. 110, par. 274; *DeGrazio v. Civil Service Com.* (1964), 31 Ill.2d 482, 489; *Sudduth v. Board of Fire & Police Comr's* (1964), 48 Ill.App.2d 194, 208; *River Forest Bank & Trust Co. v. Zoning Board* (1962), 34 Ill.App.2d 412, 417.) We cannot accept plaintiff's argument that since the city offered no contrary evidence on the question of hardship, that her testimony made a *prima facie* case for relief. Our review is rather concerned with the legal significance of the facts appearing in the entire record before the administrative board. Plaintiff has the burden of complying with the proof required by statute and ordinance whether there is or is not opposing testimony. See *River Forest Bank & Trust Co. v. Zoning Board, supra,* at page 417.

The proof here consisted of testimony that plaintiff desired to add a family room to provide additional area "for children coming into the house as visitors" of two sons, age 11 and 9, and a daughter, age 12, so that the children would not then have to come through the main entrance or use the living room for entertaining; that the family "is sorely pressed for space" and desired to remain in the neighborhood; and that plaintiff had sustained a broken leg the previous summer, and it would be easier to supervise at ground level rather than improving the basement of other areas. The present porch was limited by a chimney and was of inadequate size to construct a family room. The house included three bedrooms with the two sons sharing one bedroom, a patio area on the east side of the house which was not enclosed, and a full basement.

■■ The Highland Park Ordinance sets forth strict requirements for the securing of a variance in conformity with enabling provisions of Ill. Rev. Stat. 1967, ch. 24, par. 11-13-4. An analysis of cases in various jurisdictions indicates that courts will generally approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance, but will not affirm an area variance if it is granted solely to relieve a problem which is personal to the owner as opposed to one especially affecting the lot in question. Anderson, *American Law of Zoning, Sections* 14.45, 14.50. See also *River Forest Bank & Trust Co. v. Zoning Board,* 34 Ill.App.2d 412, *supra,* at page 419.

■■ Plaintiff has placed reliance upon *Lippe v. Cisternino* (1964), 254 N.Y.S.2d 273, 278 and *Quaglio v. LaFreneire* (1960), 203 N.Y.S.2d 968,

970 as holding that a requirement of larger quarters due to natural growth of children constitutes "practical difficulty" justifying an area variance. These cases may be distinguished both upon factual differences and upon the unique view taken by the New York authorities that a showing of hardship is not required for a variation and that minimal practical difficulties will suffice. Moreover, we believe, that the direction of the law in Illinois as well as the provisions of the ordinance before us, require more than the showing of natural growth of a family and personal inconvenience within the definition of "practical difficulties" or "particular hardship" justifying a variation from the terms of the zoning requirements. While we have not been directed to any Illinois cases with substantially similar facts to the one before us, we have noted factually similar cases in other jurisdictions, including *Didonato v. Zoning Bd. of Review of Town of Johnston* (R.I. 1968), 242 A.2d 416, 420; *In re Kline's Estate* (Pa. 1959), 148 A.2d 915, 916; *Aronson v. Board of Appeals of Stoneham* (Mass. 1965), 211 N.E.2d 228, 229; *Brown v. Beuc* (Mo. 1964), 384 S.W.2d 845, 852; *Carney v. City of Baltimore* (Md. 1952), 93 A.2d 74, 77, in which requests for variances were denied.

We, therefore, affirm the judgment below which affirmed the action of the Zoning Board of Appeals of Highland Park.

Judgment affirmed.

DAVIS, P. J., and ABRAHAMSON, J., concur.