369 So.2d 996 (1979)
HEMISPHERE EQUITY REALTY CO., INC., a/k/a Hemisphere Equity Company, and Dade County, Florida, Petitioners,
v.
KEY BISCAYNE PROPERTY TAXPAYERS ASSOCIATION, John R. Longmire, Walter Surgeon and Kass Olson, Respondents.
No. 78-2049.
District Court of Appeal of Florida, Third District.
April 17, 1979.
*997 Fine, Jacobson, Block, Goldberg & Semet, and Martin J. Fine, Miami, Stuart L. Simon, County Atty., and Stanley B. Price, Asst. County Atty., for petitioners.
John G. Fletcher, Coral Gables, for respondents.
Before PEARSON, HUBBART and KEHOE, JJ.
KEHOE, Judge.
Petitioners, Hemisphere Equity Realty Co., Inc., [hereinafter referred to as Hemisphere] and Dade County, Florida, [hereinafter referred to as Dade] brought this petition for writ of certiorari and motion to compel compliance with mandate seeking review of an order of reversal dated October 10, 1978, entered by the trial court sitting in its appellate capacity. After consideration of the petition, etc., pursuant to Florida Rule of Appellate Procedure 9.100(f), we issued an order to show cause why the relief requested should not be granted. After a hearing and consideration of the pleadings, etc., in this matter, we have determined that the petition for writ of certiorari and motion to compel compliance with mandate should be denied and the order to show cause should be discharged.
This case enjoys a long legal history; see Dade County v. Beauchamp, 348 So.2d 53 (Fla. 3d DCA 1977); and Beauchamp v. Dade County, 42 Fla. Supp. 189 (Fla. 11th Cir.Ct. 1975). The following is a summation of this history:
This matter arose out of a moratorium and zoning rollback on the eastern portion of Key Biscayne, Dade County, Florida. On March 29, 1972, the Dade County Manager, pursuant to the provisions of Section 33-319 of the Code of Metropolitan Dade County [hereinafter referred to as Code], imposed a moratorium in an area extending from Crandon Park on the north to Cape Florida State Park on the south, bounded by Crandon Boulevard to the west and by the Atlantic Ocean to the east. Petitioner Hemisphere's property, comprising six acres of the moratorium area, is located just south of Crandon Park and is bounded by Crandon Boulevard to the west and Ocean Lane Drive to the south.
On September 14, 1973, the Board of County Commissioners of Dade County [hereinafter referred to as Commissioners] adopted Zoning Resolution No. Z-284-73 which rolled back the then existing RU-4 district (50 Units per acre and upwards of 12 stories in height) to an RU-4L classification which permitted 23 units per acre and imposed a height limitation of four stories and 50 feet. Thereafter, Beauchamp, who was petitioner Hemisphere's predecessor in interest to the subject property, filed a petition for writ of certiorari in the Dade County Circuit Court contesting the rezoning of his property. After a hearing, The Circuit Court granted the petition and ordered that the property be rezoned to a classification not less restrictive than 33 units per acre and a height not less restrictive than would be allowable under the County's planned unit development ordinance. After this decision, both Beauchamp and Dade County filed appeals to this court. On July 6, 1977, we filed our opinion in Dade County v. Beauchamp, 348 So.2d 53 (Fla. 3d DCA 1977). This opinion held, inter alia, as did the trial court, that the RU-4L classification as applied to the subject property was void, and denied the property owner's cross *998 appeal whereby he requested an RU-4 classification which would permit 50 units per acre. We further concluded that, if the subject property could not qualify as a planned unit development, it would have to be rezoned so as to permit not less than 36 units per acre. After denying a petition for rehearing, our mandate was issued on August 3, 1977. Thereafter, Dade County requested a clarification in view of the fact that it had no specific zoning designation of greater than 36, but less than 50 units per acre. On September 16, 1977, we issued our order on the petition for clarification which changed the 36 units per acre to 35.9 units per acre as provided by RU-4M classification in the Code. Certiorari was denied on December 14, 1977, by the Supreme Court of Florida; however, in January of 1978, an alternative writ of mandamus was issued which was clarified to be an order to show cause. Prior to the return date of this order, both the property owner and Dade County filed a joint motion with the Supreme Court to temporarily relinquish jurisdiction back to the Commissioners to enable the property owner to present a zoning application as a means of resolving the litigation in this matter. This motion was granted, and the matter was heard by the Commissioners on February 9, 1978. After continuing negotiations between the County and the property owner (now Hemisphere), suggested development plans were submitted to the Commissioners. Following a public hearing, the Commissioners adopted Zoning Resolution No. Z-35-78 subject to certain conditions to assure development in accordance with the site plans submitted to the Commissioners. This Resolution reads as follows:
The following resolution was offered by Commissioner William G. Oliver, seconded by Commissioner Clara Oesterle, and upon poll of members present, the vote was as follows:

 Neal Adams nay Harvey Ruvin absent
 Clara Oesterle aye Barry D. Schreiber aye
 William G. Oliver aye Ruth Shack aye
 Beverly B. Phillips nay Stephen P. Clark absent
 James F. Redford, Jr. absent

WHEREAS, Hemisphere Equity Company has applied for the following:
(1) A district boundary change from RU-4L (Limited Apartment house  23 units per acre) to RU-4 (Apartments 50 units per acre)
(2) SPECIAL EXCEPTION as applied to height requirements to permit a structure including a one-story parking garage and two towers consisting of 6 and 13 stories with a maximum height of 126' (120' permitted) as an apartment building.
(3) VARIANCE OF LOT COVERAGE REQUIREMENTS to permit the aforementioned development with 43.2% (40% permitted) lot coverage.
(4) VARIANCE OF ZONING REGULATIONS as applied to open space requiring a minimum of 40% to the total lot area, to waive same to permit the aforementioned development with 37.5% landscaped open space at grade.
(5) VARIANCE of Floor area ratio requirements to permit the aforementioned development with 2.05 (2.00 permitted).
(6) VARIANCE of setback requirements to permit the building and parking garage setback 50' (62' required) from the side street (S) property line, setback 33' (62' required) from the side (N) property line and setback 43' (52' required) from the rear (E) property line.
OR IN THE ALTERNATIVE
(7) A district boundary change from RU-4L (Limited Apartment house) to RU-4M (Modified Apartment house  35.9 units per acre)
(8) SPECIAL EXCEPTION as applied to height requirements to permit a structure including a one-story parking garage and two towers consisting of 6 and 13 stories with a maximum height of 126' (50' permitted) as an apartment building.
(9) VARIANCE of Zoning Regulations as applied to the number of stories to permit the aforementioned two towers with 6 and 13 stories (4 stories permitted) as an apartment building.
(10) VARIANCE of lot coverage requirements to permit the aforementioned development with 43.1% (30% permitted) lot coverage.

*999 (11) VARIANCE of floor area requirements to permit the aforementioned development with 2.05 (.80 permitted).
(12) VARIANCE of setback requirements to permit the structures including a one story parking garage setback 25' from the front (W) property line, setback 25' from the side street (S) property line, setback 15' from the side (N) property and setback 25' from the rear (C) property line (43' required) from all property line.
AND WITH EITHER REQUEST
(13) VARIANCE of zoning regulations as applied to accessory uses to permit one tennis court in front of the principle building (not permitted) and setback 50' (75' required) from the front (W) property line.
(14) UNUSUAL USE to permit a gate house.
Plans of the proposed apartment development are on file and may be examined in the Zoning Department entitled, "Commodore IV and V" as prepared by Reiff-Fellman and Associates, Architects  Engineers and dated 1-6-78.
SUBJECT PROPERTY: A tract of land lying, situate and being in Fractional Section 32, Township 54 South, Range 42 East. Said Tract of land being a portion of Tract 2 of SUBDIVISION OF A PORTION OF MATHESON ESTATE, Key Biscayne, in Plat Book 46 at Page 86. LOCATION: The NE corner of Crandon Blvd. and Ocean Lane Dr., Key Biscayne.
WHEREAS, a public hearing of the Board of County Commissioners, Dade County, Florida was advertised and held, as required by law, and all interested parties concerned in the matter were heard, and
WHEREAS, upon due and proper consideration having been given to the matter, it is the opinion of this Board that the requested district boundary change to RU-4, Special Exception and Variances (Requests 1-6) would be incompatible with the neighborhood and area concerned and would be in conflict with the principles and intent of the plan for development of Dade County, Florida; but that the requested district boundary change to RU-4M, Special Exception and Variances (Requests 7-14) would be compatible with the neighborhood and area concerned and would not be in conflict with the principles and intent of the plan for development of Dade County, Florida.
NOW THEREFORE BE IT RESOLVED by the Board of County Commissioners, Dade County, Florida, that the requested district boundary change to RU-4, Special Exception and Variances (Requests 1-6) be and the same are hereby denied without prejudice.
BE IT FURTHER RESOLVED by the Board of County Commissioners, Dade County, Florida, that the requested district boundary change to RU-4M, Special Exception and Variances (Requests 7-14) be and the same are hereby approved, subject to the following conditions:
1. That the dedication of rights-of-way shall be made in accordance with Section 33-133 of the Code of Metropolitan Dade County unless the Director of Public Works deems such are not necessary or requires a lesser amount. Improvements shall be made of such rights-of-way in order to comply with and in accordance with the requirements of the manual of Public Works construction, as may be deemed lacking, desirable and necessary by the Public Works Director.
2. That a plot use plan be submitted to and meet with the approval of the Zoning Director; said plan to include among other things, but be not limited thereto, type, height and location of structures, density of occupancy for proposed apartments, off-street parking areas, type and location of signs, landscaping, drainage, ingress and egress drives, etc.
3. That in the approval of the plan, the same be substantially in accordance with that submitted for the hearing as prepared by Reiff-Fellman & Associates entitled "Admiral Club of Key Biscayne."

*1000 4. That the development shall be established and maintained in accordance with the approved plan.
5. That an instrument suitable for recording and meeting with the approval of the Director of the Building and Zoning Department be submitted, to the effect that the property would be developed substantially in accordance with the plans submitted for the hearing unless at some future date, either the zoning or plan of development were modified by public hearing; that said agreement shall be binding on the property owners and all other parties of interest and their successors in title.
6. That a recordable agreement be submitted to and meet with the approval of the Zoning Director providing for permanent and safe access for pedestrian and vehicular traffic within the development and particularly for right-of-access for fire, police, health and sanitation and other public service personnel and vehicles. The agreement, which shall be covenant running with the land, shall also include a stipulation that the streets, or accessways, shall be installed and maintained by the applicant, including, but not limited to, sidewalks, drainage facilities, water, sewers and fire hydrants, meeting with the approval of the Directors of the Public Works and Building and Zoning Departments. Such agreement shall be executed by all parties having and interest in the land and its improvements.
The Zoning Director is hereby directed to make the necessary changes and notations upon the maps and records of the Dade County Building and Zoning Department and to issue all permits in accordance with the terms and conditions of this resolution.
PASSED AND ADOPTED this 9th day of February, 1978.
Subsequently, the Key Biscayne Property Taxpayers Association, John R. Longmire, Kass Olson, and Walter Surgeon appealed the Resolution to the circuit court. Thereafter, the circuit court entered an order of reversal which reads as follows:
"In Dade County v. Beauchamp, 348 So.2d 53, 55 (Fla. 3rd DCA 1977), cert. den., 355 So.2d 512 (Fla. 1978), the Third District Court of Appeal required, in effect, that the property involved in this case be rezoned `to a classification not less than 35.9 units per acre;' that is, to classification RU-4M. While that litigation was still pending in the Supreme Court, the landowner and the County reached what the County refers to as a `meeting of the minds' concerning the development of the area; this agreement was embodied in Zoning Resolution No. Z-35-78 which was enacted by the County Commission on February 9, 1978 and which is now challenged in this proceeding.[1] Under the resolution which in fact rezoned the property to RU-4M, the property owner was granted the right to build two buildings of six and thirteen stories each in accordance with plans it had submitted to the County staff. The plans, however, required, and the resolution provided, the granting of a `special exception' to the 50' height limitation provided in the RU-4M zone, and numerous `variances' from pertinent requirements relating to the number of stories permitted, lot coverage, floor area, setbacks and accessory uses.
"While we agree that there has been no showing of error in the granting of the `special exception' challenged here, see B.S. Enterprises, Inc. v. Dade County, 342 So.2d 117 (Fla. 3rd DCA 1977); Ollos v. Dade County, 242 So.2d 468 (Fla. 3rd DCA 1970); we reach a contrary conclusion concerning the `variances' in question and therefore reverse those portions of the resolution which granted them. We do so simply because as seems to be conceded by everyone, the record shows that *1001 there is no legally cognizable `hardship' required both by the terms of the then-applicable Code provision, § 633.311(e), and the controlling cases, in order to justify the variances in question. These authorities, notably Josephson v. Autrey, 96 So.2d 784 (Fla. 1957) and Elwyn v. City of Miami, 113 So.2d 849 (Fla. 3rd DCA 1959), specifically hold that `variances' may not be sustained in the absence of a non-self created characteristic, or `hardship,' of the property in question, which renders it virtually impossible to use the land for the purpose or in the manner for which it is zoned. No such characteristic appears in this record.
"The respondents-appellees argue that the `hardship' cases apply only to so-called `use variances,' as opposed to the `non-use variances' involved in this case. The law is otherwise. Indeed, the proposed distinction was specifically rejected by the Third District itself, in interpreting similar Miami Beach zoning provisions in Allstate Mortgage Corp. of Florida v. City of Miami Beach, 308 So.2d 629, 632 (Fla. 3rd DCA 1975), where the court said:
`It is true that in Josephson the issue centered on a land use variance, while the issue in the instant case concerns a set-back variance. The zoning ordinance for the City of Miami Beach quoted supra does not attempt to distinguish land use variances from set-back variances. They are, rather, mentioned in the same paragraph and are subject to the same standards for granting a variance. Therefore, we find no reason to distinguish the instant case from Josephson on the basis of the type of variance requested.'
See also, Snyder v. Waukeska County Zoning Board of Adjustment, 74 Wis.2d 468, 247 N.W.2d 98 (1976); Karasik v. City of Highland Park [130 Ill. App.2d 566], 264 N.E.2d 215 (Ill. App. 1970).
"The appellees also claim that the prior litigation concerning this property somehow vests the property owner with, at least, the right to the variance as to the number of stories permitted in the area. Again, we disagree. We find nothing in the prior decisions in this case which provides for anything beyond the RU-4M classification, which the owner was granted, but which does not carry with it the departures from the requirements of that zone which were improperly approved by the Commission.
"In accordance with these views, paragraphs 9-13 of the Dade County Zoning Resolution No. Z-35-78 are hereby REVERSED and QUASHED."
Petitioners' motion to amend the order of reversal was denied. From the order of reversal, petitioners brought the instant petition for writ of certiorari and motion to compel compliance with mandate.
In their petition, petitioners assert (1) that the circuit court departed from the essential requirements of law in denying the property owner the relief to which this court [in Dade County v. Beauchamp, 348 So.2d 53 (Fla. 3d DCA 1977)] had previously held it was entitled, to-wit: to use the subject property in a manner consistent with surrounding property; and (2) that the circuit court departed from the essential requirements of law by permitting respondents to maintain an action, i.e., the appeal by them of zoning Resolution No. Z-35-78, despite their lack of standing to sue.
In our opinion, as found by the trial court, the individual petitioners, i.e., Longmire, Olson, and Surgeon, had standing to maintain the action below; however, the Key Biscayne Property Taxpayers Association, Inc., lacked such standing. These individual residents were within the notice requirement area of the Code and, because of the proximity of their property to the subject property, the character of the neighborhood, and the type of zoning proposed, stood to suffer special damages from the effects of the zoning of the subject property. See Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla. 1978); Renard v. Dade County, 261 So.2d 832 (Fla. 1972); and Pensacola Scrap Processors, Inc. v. State Road Department, 188 So.2d 38 (Fla. 1st DCA 1966).
*1002 Further, in our opinion, the circuit court in its order of reversal properly ruled that Paragraphs 9-13, inclusive, of Dade County Zoning Resolution No. Z-35-78 should be reversed and quashed. As found by the circuit court, the property owner, petitioner Hemisphere herein, failed to demonstrate any legally cognizable hardship to support the granting of the variances contained in paragraphs 9-13 of the Ordinance. Without such a showing, the variances could not be validly granted by the Commission. See Josephson v. Autrey, 96 So.2d 784 (Fla. 1957); Allstate Mortgage Corporation of Florida v. City of Miami Beach, 308 So.2d 629 (Fla. 3d DCA 1975); and Elwyn v. City of Miami, 113 So.2d 849 (Fla. 3d DCA 1959); and Section 33-311(e), Code of Metropolitan Dade County.
For the reasons set forth above, the petition for writ of certiorari and motion to compel compliance with mandate are denied and the show cause order is discharged.
NOTES
[1] We reject the respondents' contention concerning the individual petitioners' lack of standing to maintain this action and therefore will consider the case on its merits.