426 So.2d 1167 (1983)
CARLOS ESTATES, INC., a Florida Corporation, Petitioner,
v.
DADE COUNTY, Florida, a Political Subdivision of the State of Florida, Respondent.
No. 82-1544.
District Court of Appeal of Florida, Third District.
February 8, 1983.
*1168 Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff and Anthony J. O'Donnell, Jr., Miami, for petitioner.
Robert A. Ginsburg, County Atty., and Eileen Ball Mehta, Asst. County Atty., for respondent.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
We deny the petition for writ of certiorari to the Circuit Court, which, sitting in its appellate capacity, affirmed without opinion a zoning resolution adopted by the Dade County Board of County Commissioners denying to Carlos Estates, Inc., a developer, a special exception for a "zero lot line" site plan of single-family residential units in an RU-1 zone.[1] We address the petitioner's main contentions.
First, contrary to the petitioner's position, the record before the Commission reflects that the individual who appealed the decision of the Zoning Appeals Board in favor of the developer to the County Commission *1169 had the requisite standing to prosecute the appeal. That individual, a Mr. Suero, lives within 700 feet of the subject property, and although the adverse impact on him of the zero lot line special exception (e.g., decreased traffic safety and water pressure, and increased population in the neighborhood school) may have been shared with other persons in the neighborhood, Mr. Suero clearly had a "definite interest exceeding the general interest in community good share [sic] in common with all citizens," a "legally recognizable interest" sufficient to confer standing on him.[2]Renard v. Dade County, 261 So.2d 832, 837 (Fla. 1972).
We reject petitioner's argument, primarily bottomed on language in Hemisphere Equity Realty Co. v. Key Biscayne Property Taxpayers Association, 369 So.2d 996 (Fla. 3d DCA 1979), that a requisite for Suero's standing was a showing that he was specially damaged. In our view, Renard makes clear that the special damage requirement applies only in instances where an individual seeks to challenge an asserted violation of an existing and valid zoning ordinance:
"The `special damage' rule of the Boucher [v. Novotny, 102 So.2d 132 (Fla. 1958)] case is an outgrowth of the law of public nuisance. Zoning violations have historically been treated as public nuisances not subject to suit by an individual unless that individual has suffered damages different in kind and degree from the rest of the community. The Boucher rule was not intended to be applied to zoning matters other than suits by individuals for zoning violations." Renard v. Dade County, 261 So.2d at 835 (footnotes omitted).
A person, such as Suero, seeking to challenge a special exception, or persons, such as the Key Biscayne homeowners in Hemisphere Equity, seeking to challenge a variance in their immediate neighborhood, unlike alleged victims of a zoning violation, see, e.g., State ex rel. Gardner v. Sailboat Key, Inc., 306 So.2d 616 (Fla. 3d DCA 1974) (raising of grade level in claimed violation of zoning ordinance on immediately adjacent property would obstruct plaintiff's view and aggravate risk of flooding in plaintiff's home); Hudson v. Tabas, 136 So.2d 243 (Fla. 3d DCA 1962) (building of addition in claimed violation of zoning ordinance's set-back requirement on contiguous land denied plaintiff right to open space between her home and that of neighbor), need not show an impact unique to their property, that is, "special damage." All that Suero needed to show, and did show, was that the effect of the special exception on him was different from the community at large, even if no different from others in his neighborhood. While that showing might be (as it was in Hemisphere Equity) loosely called a "special damage," it is distinguishable from "special damage" used as a term of art in Renard to define the greater showing of adverse effect needed to establish standing to contest a zoning violation.
Second, while the petitioner may have met the criteria set forth in the Zero Lot Line Ordinance, it was additionally required to satisfy the special exception criteria set forth in Section 33-311(d) of the Code of Metropolitan Dade County.[3]Board *1170 of County Commissioners of Dade County v. First Free Will Baptist Church, 374 So.2d 1055 (Fla. 3d DCA 1979). There is substantial competent evidence in the record, see, e.g., DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957), to support either the County Commission's conclusion that a special exception here would generate excessive traffic, cause an undue burden on public facilities, and provoke an excessive concentration of people or population; or, alternatively, that the special exception, if granted, would adversely affect the public interest, see B & S Enterprises, Inc. v. Dade County, 342 So.2d 117 (Fla. 3d DCA 1977); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975).
Accordingly, because we cannot conscientiously conclude that the Circuit Court departed from the essential requirements of the law in affirming the County Commission's action, we deny the petition for writ of certiorari.
Certiorari denied.
NOTES
[1] Under Ordinance No. 81-9, Dade County's "Zero Lot Line Ordinance," the development of single-family residential units in a zero lot line configuration is a permitted use in an RU-1 zone, subject to review and approval of a site plan by way of special exception. The ordinance, as its name suggests, permits the dwelling to be placed against the property line, one consequence of which is that outdoor space is grouped and utilized to its maximum benefit.
[2] While we recognize that the mere fact that Mr. Suero received a courtesy notice of the special exception hearing does not, ipso facto, give him standing to appeal, F. & R. Builders, Inc. v. Durant, 390 So.2d 784 (Fla. 3d DCA 1980), the fact that he was among those deemed by the County to be entitled to notice, see § 33-310(a), Dade County Code, is a factor to be considered on the question of standing. Renard v. Dade County, 261 So.2d 832 (Fla. 1972).
[3] "Special exceptions, unusual and new uses. [The Board of County Commissioners is empowered to] [h]ear application for and grant or deny special exceptions; that is, those exceptions permitted by the regulations only upon approval after public hearing, new uses and unusual uses which by the regulations are only permitted upon approval after public hearing; provided the applied for exception or use, including exception for site or plot plan approval, in the opinion of the zoning board, would not have an unfavorable effect on the economy of Dade County, Florida, would not generate or result in excessive noise or traffic, cause undue or excessive burden on public facilities, including water, sewer, solid waste disposal, recreation, transportation, streets, roads, highways or other such facilities which have been constructed or which are planned and budgeted for construction, are accessible by private or public roads, streets or highways, tend to create a fire or other equally or greater dangerous hazards, or provoke excessive overcrowding or concentration of people or population, when considering the necessity for and reasonableness of such applied for exception or use in relation to the present and future development of the area concerned and the compatibility of the applied for exception or use with such area and its development... ."