■ In the Matter of North Shore Hebrew Academy, Appellant, v Leonard S. Wegman, as Mayor of the Village of Kings Point, et al., Constituting the Board of Trustees of the Village of Kings Point, Respondents, and Gary Gelman et al., Intervenors-Respondents. — In a proceeding pursuant to CPLR article

78, *inter alia,* to review a determination of the Board of Trustees of the Village of Kings Point, dated February 20, 1980, denying an application for an amendment of a special use permit to allow a private school to conduct a performing arts program on Sundays, petitioner appeals from a judgment of the Supreme Court, Nassau County (Pantano, J.), entered July 19, 1983, which, *inter alia,* dismissed the petition.

Judgment reversed, on the law, with costs, and petition granted to the extent of (1) annulling the determination and remitting the matter to the respondent board of trustees with the direction to grant the requested amendment to petitioner's special use permit under such reasonable conditions as will permit the operation of a Sunday performing arts program while mitigating its detrimental effects upon the surrounding community, and (2) declaring that subdivision 2 of section 231 of the Building Zone Ordinance of the Village of Kings Point is unconstitutional to the extent indicted herein.

The North Shore Hebrew Academy (hereinafter the academy) is a Jewish day school, organized under the Religious Corporations Law, offering a program of secular and Judaic studies. In or about January, 1977, the academy applied to the Board of Trustees of the Village of Kings Point for a special use permit to operate a Hebrew day school for children in nursery through fourth grades, with classes to be held on Monday through Friday of each week between the hours of 8:30 A.M. and 3:30 P.M. in a building formerly used by the Board of Education of the Great Neck Union Free School District (hereinafter the Board of Education) for an elementary school. The school building, which the academy leased and subsequently purchased from the Board of Education, is situated in a Residence A-2 District, zoned for single-family detached dwellings on lots having a minimum area of 40,000 square feet. Access to the school is obtained by two-lane roads having no sidewalks and the nearest four-lane highway is approximately one mile away. Subdivision 2 of section 231 of the Building Zone Ordinance of the Village of Kings Point provides that public and private schools and houses of worship are permitted in residential districts only upon the granting of a special use permit by the board of trustees. The provision of the zoning ordinance, *inter alia,* authorizes the board of trustees to require educational and religious institutions seeking special use permits to locate in residential neighborhoods to meet certain minimum restrictions, including a minimum plot size, set-backs from the street and the boundaries of neighboring property, screening along the boundaries of neighboring property and "[o]ff-street parking providing one

parking space for every two persons in the total capacity of persons whom the premises are designed to legally and safely accommodate" (Building Zone Ordinance, § 231, subd 2, par f). On March 23, 1977, the board of trustees adopted a resolution granting the special exception permit sought by the academy, with the proviso that "[t]here shall be no expansion of existing physical facilities, and no change in grade levels or days and hours of operation except on further application to and approval by this Board".

In the fall of 1979, the academy began to conduct classes on Sundays in music, folk dancing and dramatics. The program was open to children who were not enrolled in the academy's weekday program, as well as to regular academy students. After officials from the village notified the academy that the Sunday classes violated the limitations on the hours and days of operation contained in the special use permit granted in March, 1977, the academy applied to the board of trustees for an amendment to the permit to allow it to operate a center for the performing arts on Sundays, between the hours of 10:00 A.M. and 1:30 P.M. The board of trustees held public hearings on the academy's application, at which representatives of the day school and residents of the surrounding neighborhood who opposed the center for the performing arts on Sundays testified.

On February 20, 1980, the board of trustees passed a resolution denying the academy's application for an amendment of its special use permit so as to allow it to operate a center for the performing arts on Sundays. The board of trustees concluded that "[t]he scheduling of such an activity on a Sunday, with its attendant noise and traffic, is an unwarranted interference with the peaceful use and enjoyment of the properties in the neighborhood" and that the on-site parking facilities maintained by the academy were grossly inadequate for the program.

The academy commenced the instant proceeding pursuant to CPLR article 78, *inter alia,* to annul the determination of the board of trustees denying its application to conduct a Sunday performing arts program and to declare subdivision 2 of section 231 of the zoning ordinance unconstitutional, both on its face and as applied by the board of trustees. Special Term confirmed the determination, concluding that the board of trustees rationally based its denial of the academy's application to operate the Sunday performing arts program on the lack of adequate on-site parking facilities, as required by section 231 (subd 2, par f) of the zoning ordinance. The judgment appealed from dismissed the petition but authorized the academy to "[reapply] to respondent for an amendment to its special use permit to maintain a Center

for the Performing Arts at its premises * * * on Sundays between the hours of 10:00 A.M. and 1:30 P.M. [upon a showing] that provisions would be made for the transportation of students to and from said premises in such a manner as would obviate the need for additional off-street parking facilities", e.g., by the furnishing of bus transportation from a central location away from the residential area of the village.

We conclude that the board of trustees unconstitutionally applied the zoning ordinance to prohibit an educational and religious institution from expanding its programs. The evidence on the record establishes that the proposed center for the performing arts is sufficiently related to the academy's over-all educational and religious purposes to entitle it to the constitutional protections generally accorded to educational and religious uses (see *Matter of Community Synagogue v Bates,* 1 NY2d 445, 453). Consequently, the board of trustees may not prohibit the academy from conducting the Sunday educational and religious program for the same reasons which would justify the exclusion or restriction of commercial activities, including the disruption of the tranquility customarily enjoyed by neighboring property owners on Sunday mornings by the noise and automobile traffic generated or expected to be generated by the academy's center for the performing arts (see *Matter of Westchester Reform Temple v Brown,* 22 NY2d 488, 496; *Matter of Diocese of Rochester v Planning Bd.,* 1 NY2d 508; *Matter of Islamic Soc. v Foley,* 96 AD2d 536, 537). Additionally, the board of trustees' blanket prohibition of the Sunday classes in performing arts constitutes an impermissible interference in the academy's constitutionally protected educational and religious functions, which is not directly related to the zoning use of the real property the school occupies (see *Matter of Summit School v Neugent,* 82 AD2d 463, 466-467; *Bernstein v Board of Appeals,* 60 Misc 2d 470, 474, app dsmd 31 AD2d 650). The academy found it necessary to conduct the performing arts classes on Sundays due to the demanding and time-consuming nature of the dual secular and Judaic studies curriculum taught on weekdays.

Moreover, even assuming, *arguendo,* that the reasons advanced by the opposing property owners and the board of trustees were sufficient to survive the stricter scrutiny of zoning restrictions on religious and educational institutions, petitioner is also correct that the determination of the board of trustees was not supported by substantial evidence. There was no "hard evidence" presented at the hearings to establish that the noise and automobile traffic resulting from the center for the performing arts operated by the academy prior to the denial of the

amended permit materially disrupted the tranquility of the surrounding neighborhood or that the on-site parking facilities were inadequate to accommodate the staff members and students attending the Sunday program (see *Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor,* 38 NY2d 283, 289-290, cert den 426 US 950; *Matter of Mikveh of South Shore Congregation v Granito,* 78 AD2d 855; see, also, *Matter of Sullivan v Town Bd.,* 102 AD2d 113). Indeed, it appears that the board of trustees and the neighboring property owners were motivated primarily by their speculation and fears concerning the noise and traffic that the program would generate if it expanded significantly, when there was no evidence that such an expansion in the student body was contemplated by the academy. The record does not contain substantial evidence that the proposed center for the performing arts "will have a direct and immediate adverse effect upon the health, safety or welfare of the community"; accordingly, the board of trustees erred in denying the application, thereby prohibiting the operation of this religious and educational program by the academy (see *Matter of Westchester Reform Temple v Brown,* 22 NY2d 488, 494, *supra; Matter of Holy Spirit Assn. v Rosenfeld,* 91 AD2d 190, 191-192).

Petitioner is also correct that the provision in section 231 (subd 2, par f) of the zoning ordinance requiring that educational or religious institutions seeking special use permits to locate in residential areas provide a minimum number of on-site parking spaces is unconstitutional on its face, to the extent that the board of trustees lacks the power to vary this requirement (see *Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor,* 38 NY2d 283, 289, *supra*). It appears that the board of trustees found that on-site parking maintained by the academy to be adequate for the purpose of its regular weekday classes. The residents of the surrounding neighborhood are justifiably more concerned about the adequacy of the on-site parking as it relates to the Sunday performing arts program, to which the majority of the students were transported by private automobile, rather than by bus, as are the students enrolled in the academy's weekday program. Nevertheless, Special Term improperly placed upon the academy the entire burden of addressing this legitimate concern of the local community. The case law on the zoning regulation of religious and educational institutions has consistently held that a municipality has an affirmative obligation to adopt less restrictive alternatives to completely barring such an institution from locating or expanding its facilities in a residential neighborhood (see *Matter of*

*Westchester Reform Temple v Brown,* 22 NY2d 488, 496-497, *supra).*

Therefore, the matter is remitted to the board of trustees with the direction to grant the amendment to the academy's special use permit to enable it to operate a center for the performing arts on Sundays after establishing reasonable conditions to mitigate the adverse effects of the program on the surrounding neighborhood, including the disturbance caused by automobiles parking or stopping on residential streets (see *Matter of Islamic Soc. v Foley,* 96 AD2d 536, 537, *supra; Matter of American Friends v Schwab,* 68 AD2d 646, 651, app dsmd 48 NY2d 754, mot for lv to app den 48 NY2d 611). Gibbons, J. P., O'Connor, Weinstein and Lawrence, JJ., concur.