511 So.2d 645 (1987)
ENCUENTROS FAMILARES, INC., and Metropolitan Dade County, a Political Subdivision of the State of Florida, Petitioners,
v.
Barbara MUSGROVE and Bird-Kendall Homeowners' Association, Inc., a Non-Profit Corporation, Respondents.
No. 87-489.
District Court of Appeal of Florida, Third District.
July 28, 1987.
Rehearing Denied September 9, 1987.
*646 Fine, Jacobson, Schwartz, Nash, Block & England and Stanley B. Price; Robert A. Ginsburg, Co. Atty., and Eileen Ball Mehta, Asst. Co. Atty., Miami, for petitioners.
John G. Fletcher, South Miami, for respondents.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
The Board of County Commissioners of Dade County, Florida, approved the application of Encuentros Familares, Inc.,[1] (Family Encounters) to use certain land designated for agricultural use on the Comprehensive Development Master Plan for a facility to help families foster religious awareness by stimulating dialogue between parents and children through meditation, prayer, and religious activity  in other words, a religious retreat.
On appeal by certain individual homeowners in the area and a homeowners' association (the present respondents), the circuit court reversed the Commission, stating, pejoratively, that the Commission was guilty of "spot zoning."[2] The County and Family Encounters petitioned this court for a writ of certiorari to review the lower court's decision. We grant the writ and vacate the lower court's decision invalidating the Commission's action.
The petitioners correctly contend  and the respondents agree  that the lower court departed from the essential requirements of the law in that, at least in part, it perceived the issue before it to be "whether or not the record reflects that the actions of the County Commission were `fairly debatable'."[3] The parties also agree that, as this court most recently declared in Metropolitan Dade County v. Fuller, 497 So.2d 1322, 1322 (Fla. 3d DCA 1986), "an unusual use, like a special exception, is subject only to the test enunciated in Section 33-311(d) of the [Dade County] Code, which is essentially whether the proposal serves the public *647 interest."[4]See also Machado v. Musgrove, (Fla. 3d DCA 1987) (Case No. 87-415, opinion filed July 14, 1987). Thus, it is the function of the zoning authority  here the Commission  to determine pursuant to Section 33-311(d) only whether the requested unusual use
"would not generate or result in excessive noise or traffic, cause undue or excessive burden on public facilities, ... tend to create a fire or other equally or greater dangerous hazards, or provoke excessive overcrowding or concentration of people or population, when considering the necessity for and reasonableness of such applied for exception or use in relation to the present and future development of the area concerned and the compatibility of the applied for exception or use with such area and its development."
It then becomes the function of the circuit court to determine only whether the Commission's decision is supported by substantial competent evidence. Carlos Estates, Inc. v. Dade County, 426 So.2d 1167 (Fla. 3d DCA 1983); Grefkowicz v. Metropolitan Dade County, 389 So.2d 1041 (Fla. 3d DCA 1980).
The real point of departure between the parties is their differing views as to whether there was substantial competent evidence to support the decision of the Commission.[5] While the respondents suggest that we should, as we did in Fuller, return the matter to the circuit court to allow it to make that determination, we are satisfied that the circuit court  in addition to applying the erroneous fairly debatable test  applied, for good measure, the substantial competent evidence test in invalidating the Commission's action.[6] It is thus unnecessary for us to remand the cause to the circuit court.
Unlike the circuit court, we conclude that there was substantial competent evidence to support the Commission's determination. The applicant demonstrated, for example, that the proposed use would not generate excessive noise or traffic. The proposed activities were intermittent. The Building and Zoning Director, who recommended approval of the application, described the use as passive, low key, and indoor-oriented. He observed that the riding academies scattered throughout the area would generate similar or more traffic than the proposed use. The evidence before the Commission further showed that the religious retreats and encounters are dedicated to meditation and prayer; the activities would be conducted indoors and require quiet surroundings; and the property would not be used for conventional church services, weddings, parties, bazaars, or outdoor recreation. *648 Moreover, rather than unduly burdening public services, the religious use would actually improve public services in that the extension of the water line by the applicants would bring public water to several properties that otherwise would remain on private wells, and the applicants would be required to make improvements to the adjacent roadways. The evidence also showed that the proposed use would be reasonably compatible with the development in the area: there are six other churches and schools already existing in the neighborhood, three other vacant parcels are owned by churches, and there are schools and a social club on the same street as the subject property. Finally, the religious and family values advanced by the Family Encounters program are consistent with the Commission's obligation to protect the public interest.[7] As the United States Supreme Court has observed: "The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary." Berman v. Parker, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27, 38 (1954). "The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." Village of Belle Terre v. Boraas, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797, 804 (1974).
Accordingly, we grant the petition for writ of certiorari and vacate the circuit court's decision. The decision of the Commission approving the application for unusual use is thus reinstated.
NOTES
[1] The application was actually filed by Jack S. and Ruth Pinder, the owners of the property, who had contracted to sell the land to Encuentros Familares.
[2] The court's two-to-one opinion recites in pertinent part:

"By permitting this `unusual use', the County Commission has singled out an area for treatment different from that of similar surrounding land. This action, which is unquestionably spot zoning, is not in accordance with the Comprehensive Plan and cannot be justified on the bases of health, safety, morals or general welfare of the community.
"As a guise for spot zoning the subject property so as to permit the `unusual use', the County Commission has declared this project to be a `religious outreach program' exempt from the development guidelines of the Comprehensive Plan and not subject to review. The County Commission's sole rationale for permitting the `unusual use' was based upon its finding that the project was a religiously oriented program. The record reflects otherwise."
[3] The "fairly debatable" test is a standard applied to rezoning. See Dade County v. United Resources, Inc., 374 So.2d 1046 (Fla. 3d DCA 1979).
[4] A church or a mission or their functional equivalents, see Synod of Chesapeake, Inc. v. Newark, 254 A.2d 611 (Del. Ch. 1969); Corporation of Presiding Bishop v. Ashton, 92 Idaho 571, 448 P.2d 185 (1986); Board of Zoning Appeals v. Wheaton, 118 Ind. App. 38, 76 N.E.2d 597 (1948); Keeling v. Board of Zoning Appeals, 117 Ind. App. 314, 69 N.E.2d 613 (1946); St. John's Evangelical Lutheran Church v. City of Hoboken, 195 N.J. Super. 414, 479 A.2d 935 (Law Div. 1983); North Shore Hebrew Academy v. Wegman, 105 A.D.2d 702, 481 N.Y.S.2d 142 (1984); Westbury Hebrew Congregation, Inc. v. Downer, 59 Misc.2d 387, 302 N.Y.S.2d 923 (Sup.Ct. 1969); State ex rel. Covenant Harbor Bible Camp v. Steinke, 7 Wis.2d 275, 96 N.W.2d 356 (1959), are uses contemplated in a district, as here, zoned G.U. See § 33-18, Dade County Code.
[5] The circuit court's conclusion that the record reflects that the petitioner organization and its program is not religiously oriented but a mere commercial enterprise is utterly baseless. Indeed, not even the opponents of the application ever suggested that the property was not going to be used for a religious purpose. It is undisputed that Family Encounters is a not-for-profit corporation sponsored by the Catholic Archdiocese of Miami and is funded through contributions of its members and private benefactors. The program has been operating in Miami for fourteen years and has been particularly successful in helping Catholic families of Hispanic origin cope with the pressures of acculturation and social change. Although Family Encounters is not a parish church, it is dependent on the Archdiocese of Miami as to all religious matters. A Jesuit priest is the Spiritual Director of Family Encounters. The priest is also a faculty member and counselor at Belen Jesuit Preparatory School.
[6] The penultimate paragraph of the circuit court's opinion concludes: "The record and transcript contain no competent substantive evidence that would support the findings of the Commission or demonstrate that the actions of the Commission were fairly debatable." (emphasis supplied).
[7] One of the stated Goals of the Comprehensive Development Master Plan (CDMP) is "To Support and Promote the Cultural Arts and Spiritual Values of Our Citizens." CDMP at 7. The Goals of the CDMP are primary components of the Plan. See § 2-113.1, Code of Metropolitan Dade County, Florida.