SANDERS ET AL., APPELLEES, *v.* SNYDER ET AL., APPELLANTS.

(No. 349—Decided October 31, 1960.)

*Messrs. Parker & Fenton,* for appellees.
*Messrs. Newcomer & Shaffer,* for appellants.

FESS, J. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court enjoining defendants from using certain lots in the Paradise Park subdivision of the village of Montpelier for any purpose other than residential purposes as defined in ordinances Nos. 13 and 113 of such village. The petition seeks to enjoin the construction of a building proposed to be used as a general commercial merchandising establishment upon five lots owned by defendants fronting on the south side of East Madison Street in the village immediately adjacent to plaintiffs' residence to the west thereof. The evidence discloses that defendants propose to construct a so-called shopping area which plaintiffs claim would be in violation of the aforesaid zoning ordinances, so far as the five lots in question facing upon Madison Street are concerned. Plaintiffs do not seek to enjoin the use of certain lots owned by the defendants facing Main Street, which is a through highway—alternate U. S. Route 20—and in the particular block there are four residences, several vacant lots, a grocery store, oil company and plumbing shop.

The area involved lies between Main Street and Madison Street in the block bounded on the west by East First Street and on the east by East Second Street. In this block there are four residences on Madison Street, no commercial buildings and several vacant lots. Madison Street is not a through street and has very little traffic.

All the lots in the block are 25 feet wide and 125 feet deep. The four lots upon which plaintiffs' residence is constructed face upon Madison Street. Defendants own the aforesaid five lots facing Madison Street lying west of plaintiffs' residence and also four and one-half fraction lots facing Main Street, lying south of their Madison Street lots. Defendants are also seeking to acquire an additional four lots on Main Street lying south and to the rear of plaintiffs' lots. Thus, the lots of the defendants, including those sought to be acquired, together with the lots of the plaintiffs, constitute a square. Plaintiffs' lots occupy the northeast quarter of the square. Defendants' lots occupy the west half of the square and defendants are seeking to acquire the southeast quarter of the square. This square, consisting of about sixteen lots, lies midway in the block between East First Street and East Second Street.

Defendants admit that they are about to construct a shopping area and commercial building upon the lots in question but deny that their five lots facing upon Madison Street are zoned for residential use only.

In support of their claim that the lots of the defendants facing East Madison Street are zoned for residential use only, plaintiffs have introduced ordinances No. 13, enacted in 1940, and No. 113, enacted in 1951, prior to the annexation in 1954 of the territory comprising the lots of plaintiffs and of the defendants. It is readily apparent that the determination of this action depends upon whether, upon annexation of the territory in 1954, defendants' lots became subject to the zoning ordinances enacted in 1940 and 1951, or whether such lots are unzoned.

Ordinance No. 13 adopted September 3, 1940, merely divides the village into two classes: (1) residential, and (2) non-residential, and prescribes that no building or premises shall be erected or used for any purpose other than a purpose permitted in the district in which such building or premises is

located. Section 6 thereof, *inter alia,* provides:

"The term 'premises' shall mean any lot or tract of ground *within the limits of the municipality,* whether occupied by a building or structure or vacant, except only alleys, streets and other rights of way."

Section 7 provides:

"The premises, lots and parcels of land *as now laid out in platted additions to said village,* and *as now* laid out on the county auditor's plats and maps for the taxation of the parts of said village which are not otherwise platted, which abut on the following named streets, or parts of streets, and those premises which are within areas bounded by streets named and those premises which abut street boundaries as herein described, *in the village of Montpelier, Ohio,* are hereby declared to constitute and to be residential zones, to wit: * * *."

Then follows a description of the several areas described by streets, presumably all within the confines of the corporate limits.

Section 8 provides:

"Those premises, lots or lands, within the *corporate limits of the village of Montpelier,* state of Ohio, not classified under section 7 of this ordinance shall be declared to be and constitute nonresidential zones."

Ordinance No. 113, passed March 19, 1951, is entitled "An ordinance zoning a portion of the village of Montpelier now a residential district." It incorporates by reference the definition incorporated in ordinance No. 13.

This ordinance provides further as follows:

"5. No building or other structure of any nature, other than a residence, shall be moved onto, built or constructed on any premises within a residential zone; and no premises within a residential zone shall be used for any purpose, or purposes, other than residential purposes. Nothing in this ordinance contained shall forbid the planting, cultivation and harvesting of crops and garden truck on premises within a residential zone.

"6. The premises, lots and parcels of land as *now laid out in platted additions to said village,* and as now laid out on the county auditor's plats and maps for the taxation of the parts

of said village which are not otherwise platted, which abut on that part of the following named streets, or parts of streets as herein described *in said village* are hereby declared to constitute, and be residential zones: to wit the lots on:

"Both sides of Lincoln Avenue, both sides of Fulton Road and both sides of East First Street which lie north of Main Street; both sides of East Snyder Avenue, East Water Street and East Madison Street which lie east of the lands owned by the Williams County Agricultural Association."

Neither ordinance refers to any zoning map. During argument, counsel conceded that no zoning map was in existence. In our opinion, notwithstanding no easterly terminus was fixed in ordinance No. 113 with respect to East Madison Street, construing the ordinance as a whole, it was not the intent and purpose of the village council in enacting the ordinance to go beyond the city limits into the territory lying adjacent and to the east of such easterly boundary of the village. In this connection, it is of some significance that although both sides of East First Street are mentioned, no mention is made of either East Second Street or Thurston Street, which intersect East Madison Street east of East First Street.

It is therefore concluded that neither ordinance No. 13 nor ordinance No. 113 sought to zone extra-territorially the area adjacent to the corporate limits on the east.

In Ohio, the power of a municipality to adopt zoning regulations is derived from two sources:

1. Section 3 of Article XVIII of the Ohio Constitution provides that municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws, pursuant to which a municipality is authorized to enact zoning ordinances. *Pritz* v. *Messer*, 112 Ohio St., 628, 149 N. E., 30. Cf. *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S., 365.

2. Legislative authorization under Sections 713.01 to 713.14, Revised Code, formerly Sections 4366-1 to 4366-12, General Code, in effect at the time of the adoption of ordinances Nos. 13 and 113. Section 3 of Article XVIII obviously does not confer any extra-territorial zoning authority upon municipali-

ties. *Prudential Co-operative Realty Co.* v. *City of Youngstown*, 118 Ohio St., 204, 207, 160 N. E., 695. On the other hand, extraterritorial authority may be conferred upon a municipality by legislation. *Prudential Co-operative Realty Co.* v. *Youngstown, supra.* In this case the Supreme Court states that in recognition of the mutual interest of cities and surrounding territory, legislatures have given municipalities certain regulatory authority over their environs. See, also, *State, ex rel. Kahler-Ellis,* v. *Cline* (C. P.), 69 Ohio Law Abs., 305.

Sections 4366-1 to 4366-12, General Code, in effect at the time the Montpelier ordinances were adopted in 1940 and 1951, authorized the establishment of municipal planning commissions. Section 4366-2, General Code, authorized a planning commission to make plans and maps of the whole or any portion of a municipality, *and of any land outside of the municipality,* which in the opinion of the commission should bear relation to the planning of the municipality, and to make changes in such plans or maps when it deemed them advisable. Section 4366-11, General Code (now Section 713.12, Revised Code), provided that before any ordinance might be passed, the legislative authority of the municipality should hold a public hearing after thirty days' notice and that no such ordinance different from the plan or report submitted by the commission should take effect unless passed or approved by not less than three-fourths of the membership of the legislative authority.

From a review of the record, it is apparent that the village of Montpelier, in enacting its zoning ordinances, did not do so in compliance with Sections 4366-1 to 4366-12, General Code, and therefore exercised its authority under the home-rule amendment to enact the ordinances. It is likewise apparent that in the absence of compliance with the provisions of Section 4366-1 *et seq.,* General Code, no statutory authority was conferred upon the village to make the provisions of the ordinances applicable to territory beyond the village limits.

Plaintiffs contend first, that the ordinances should be so construed as to include the territory east of and adjacent to the village limits and, second, that the ordinances operate prospectively so as to cover defendants' property when annexed to the village. But in view of our conclusion that the ordinances were

not intended to embrace defendants' property lying beyond the boundaries of the village, we are not required to determine whether the ordinances would have prospective application, Cf. 41 A. L. R. (2d), 1463; *City of Highland Park* v. *Calder* (1932), 269 Ill. App., 255; *contra, Hawkins* v. *Louisville & Jefferson County Planning & Zoning Commission* (Ky. 1954), 266 S. W. (2d), 314, 41 A. L. R. (2d), 1459; *City of Louisville* v. *Bryan S. McCoy, Inc.* (Ky.), 286 S. W. (2d), 546, nor to determine whether the village might have, in express terms, provided that, when annexed, adjacent property should be subject to the provisions of such an ordinance. Cf. *State, ex rel. Sims,* v. *Eckhardt* (Mo.), 322 S. W. (2d), 903; *State, ex rel. Albert Realty Co., Inc.,* v. *Village of Brown Deer,* 7 Wis. (2d), 93, 95 N. W. (2d), 808.

We therefore find that at the time defendants' lots on Madison Street were annexed to the village in 1954, such lots were and are now in an unzoned area.

Finding and judgment for defendants and petition dismissed at plaintiffs' costs and cause remanded to the Common Pleas Court for assessment of costs.

*Judgment for defendants.*

SMITH and DEEDS, JJ., concur.