(No. 47134

THE CITY OF CARBONDALE, Appellant, v. JOE
VAN NATTA *et al.,* Appellees.

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

484

GOLDENHERSH, J., dissenting.

John Paul Womick, of Carbondale, for appellant.

E. Dan Kimmel, of Carbondale, for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

In July 1974 the City of Carbondale, which under our constitution is a home-rule unit (Ill. Const. (1970), art. VII, sec. 6(a)), obtained a temporary injunction in the circuit court of Jackson County restraining the defendants, Joe Van Natta, Master Key Enterprises, Inc., and Cherry Construction, Inc., from acting in violation of a zoning ordinance of the City. Ordinance No. 1216 contains the City's zoning regulations, which by their terms apply within the municipality and to the area extending 1½ miles beyond and contiguous to the boundaries of the City. The City's complaint alleged that the defendants, who were constructing a building within the 1½-mile area contiguous to the City, were not complying with the setback provisions of the ordinance. The defendants moved to dismiss the complaint on the ground that the City had no authority to enforce setback lines outside its corporate

limits. The court granted the motion to dismiss, and the appellate court affirmed. (22 Ill. App. 3d 327.) We granted the City's petition for leave to appeal.

The City contends that it is empowered by section 11—13—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—1) to apply its zoning regulations, including setback regulations, within a 1½-mile area beyond and contiguous to its boundaries. In the alternative, the City argues that without recourse to the statute it can regulate setback lines in such a 1½-mile area under its home-rule powers granted by section 6(a) of article VII of the Constitution of 1970. As the City is a home-rule unit we shall consider first whether the City under its home-rule authority may by ordinance prescribe for setback lines in areas beyond its own boundaries.

The grant of powers to home-rule units is set out in section 6(a) of article VII of our constitution of 1970. It in part states: "*** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." At the constitutional convention the Committee on Local Government recommended that the grant of powers in section ·6(a) contain the specifically limiting wording "within. its corporate limits." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1577 (hereinafter cited as Proceedings).) Though the language was not used when the section was adopted (4 Proceedings 3125), an examination of the proceedings of the convention shows that the intention was not to confer extraterritorial sovereign or· governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature. See 4 Proceedings 3040-41, 3072-75; see generally Baum, A Tentative Survey of Illinois Home Rule

(Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict, 1972 U. Ill. L.F. 559, 582; see also Sandalow, *The Limits of Municipal Power Under Home Rule: A Role for the Courts,* 48 Minn. L. Rev. 643, 692-700 (1964); *Sanders v. Snyder* (1960), 113 Ohio App. 370, 178 N.E.2d 174, 17 Ohio Op. 2d 392.

In *People ex rel. City of Salem v. McMackin,* 53 Ill.2d 347, we stated that a home-rule unit may acquire land outside its corporate limits under home-rule powers. However, we specifically distinguished extraterritorial acts which are proprietary in character from acts which are governmental. After observing that "acquisition of land by purchase or gift is not an exercise of a governmental power; it is an act of a proprietary nature," we said: "However, there is a distinction between the right to acquire property outside of its corporate limits and the power to exercise rights of sovereignty over such property. [Citations.] Under the Act in question, the city of Salem exercises no rights of sovereignty over the property under consideration." 53 Ill.2d 347, 365, 366.

The statute relied on by the City for legislative authority to establish setback requirements beyond its boundaries is section 11−13−1(2) of the Illinois Municipal Code. The statute provides in part:

"To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation of runoff of storm or flood waters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, and to insure and facilitate the preservation of sites, areas, and structures of historical, architectural and aesthetic importance; the corporate authorities in each municipality have the following powers:

*** (2) to establish, regulate and limit, subject to the provisions of Division 14 of this Article 11, the building

or set-back lines on or along any street, traffic-way, drive, parkway or storm or floodwater runoff channel or basin; ***.

The powers enumerated may be exercised within the corporate limits or within contiguous territory not more than one and one-half miles beyond the corporate limits and not included within any municipality. ***" Ill. Rev. Stat. 1973, ch. 24, par. 11—13—1.

Section 11—14—1 of the Illinois Municipal Code, which is referred to in section 11—13—1(2) as "Division 14 of this Article," provides:

"In addition to existing powers and to the end that adequate light, pure air, or safety may be secured and that congestion of public streets may be lessened or avoided, the corporate authorities in each municipality have power by ordinance to establish, regulate, and limit the building or set-back lines on or along any street, traffic way, drive, or parkway or storm or floodwater runoff channel within the municipality, as may be deemed best suited to carry out these purposes. The powers given by this Division 14 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted." Ill. Rev. Stat. 1973, ch. 24, par. 11—14—1.

The defendants contend that the general power to zone in the 1½-mile area contiguous to the municipality granted in section 11—13—1 is limited by section 11—14—1 in that the latter section specifically limits the power to establish and regulate setback lines to the area "within the municipality." This argument has only superficial appeal and fails when we consider the legislative history of the statutes to ascertain the legislative intendments.

Provisions of the present section 11—13—1, which confer a general power to zone, were originally enacted in 1921. (Laws of 1921, p. 180, sec. 1; Smith's Rev. Stat. 1921, ch. 24, par. 66). The original version of section 11—14—1, granting municipalities the power to establish and regulate setbacks, was enacted in 1933 (Laws of 1933, p. 218, sec. 1; Smith-Hurd Rev. Stat. 1933, ch. 24, par.

73a), and its provisions have co-existed with the provisions of section 11—13—1 and its predecessors since that time. In 1943 the legislature added the power to establish building or setback lines to the original version of section 11—13—1 (Revised Cities and Villages Act, sec. 73—1; Laws of 1943, vol. 1, p. 320, sec. 1; Ill. Rev. Stat. 1943, ch. 24, par. 73—1), but it did not repeal the separate grant of power to establish setbacks (Revised Cities and Villages Act, sec. 30—1; Ill. Rev. Stat. 1943, ch. 24, par. 30—1). In 1961, the Illinois Municipal Code was enacted (Laws of 1961, p. 576), and section 11—13—1 of the Code became the successor to section 73—1 of the Revised Cities and Villages Act, and section 11—14—1 became the successor to section 30—1. Section 11—13—1 of the Code provided that the corporate authorities in each municipality had the power to establish, regulate and limit, the building or setback lines "subject to the provisions of Division 14 of this Article 11" (i.e., section 11—14—1 et seq.). In 1963 the legislature amended section 11—13—1 to declare: "The powers enumerated may be exercised within the corporate limits or within contiguous territory not more than one and one-half miles beyond the corporate limits and not included within any municipality." Laws of 1963, pp. 863-64.

It seems clear that there was no legislative intent to limit the power to establish setback lines to within the boundaries of the municipality. Rather the intent underlying making the exercise of the right to establish and regulate setback lines "subject to the provisions of Division 14 ***" was to protect existing users of property whose use might not conform to the setback regulation. If the legislature had intended to confine a municipality's power to establish setbacks to its own boundaries, a more likely and efficient means to have done so would have been simply to strike and rescind the authority regarding setbacks which had been added in 1943. The municipal authority for setbacks then would have been only under

section 11—14—1 and would have been limited to the municipality's boundaries. When the legislature referred to Division 14, *i.e.*, section 11—14—1, it was not intending to limit the territorial reach of section 11—13—1(2) but to give existing users the same protection under 11—13—1 as they enjoyed under 11—14—1 by in effect incorporating from section 11—14—1 the statement that:

> "*** The powers given by this Division 14 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted."

Too, this interpretation permits the reasonable view that the legislature should be aware of and recognize the practical necessity of giving a municipality zoning authority beyond its own territorial limits. See Ill. Rev. Stat. 1973, ch. 24, par. 11—12—5; A. Rathkopf, The Law of Zoning and Planning, ch. 25, sec. 1 (3d ed. 1974); Bartelt, Extraterritorial Zoning: Reflections on Its Validity, 32 Notre Dame Lawyer 367 (1957); Bouwsma, The Validity of Extraterritorial Municipal Zoning, 8 Vand. L. Rev. 806 (1955).

Relatedly, it insures a recognition that the authority to regulate should be "normally exercised as part of the zoning power, and essentially all zoning ordinances contain provisions requiring that buildings be set back a certain distance from the public way." (2 R. Anderson, American Law of Zoning sec. 8.43, at 34 (1968); see also 2 Yokley, Zoning Law and Practice sec. 17—3 (3d ed. 1965); see generally *City of Palos Heights v. Pakel,* 121 Ill. App. 2d 63; *Karasik v. City of Highland Park,* 130 Ill. App. 2d 566.) Municipalities may be frustrated in attempting to enforce other provisions of their zoning ordinances if they are not allowed to establish setback lines. See *Stemwedel v. Village of Kenilworth,* 14 Ill.2d 470, 475.

Finally, we consider a question introduced by the City in rebuttal during oral argument. Section 11—13—1 was additionally amended in 1971 (Pub. Act 77—1373; Laws

of 1971, pp. 2437, 2439) by the addition *inter alia* of a final sentence to the statute, which reads: "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit."

We have seen that a municipality does not have extraterritorial zoning authority under its home-rule powers. Thus, if the legislative classification confining the applicability of section 11—13—1 to non-home-rule units were to be judged valid, there would be the incongruous situation of non-home-rule units being able to zone extraterritorially, while home-rule units could not. We can see no reasonable basis for differentiating between non-home-rule units so far as the power to zone extraterritorially is concerned. For a classification to be constitutional there must be a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not in relation to the statute under which the classification is proposed. *Begich v. Industrial Com.*, 42 Ill.2d 32; *People ex rel. County of Du Page v. Smith*, 21 Ill.2d 572.

The provision in the amendment to section 11—13—1 that "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit" would establish an unconstitutional classification and is void.

Clearly this invalid provision may be severed from the balance of section 11—13—1. In considering whether an unconstitutional portion of a statute could be severed from the remainder so as to permit the remainder to stand, this court described in *Livingston v. Ogilvie*, 43 Ill.2d 9, 23, a test to be employed: "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated." See also *Winter v. Barrett*, 352 Ill. 441, 475; *Fiorito v. Jones*, 39 Ill.2d 531, 540.

The amendatory act of 1971 consisted only of the language we hold to be invalid and language simply adding another objective or statement of purpose to section 11—13—1 ("and to insure and facilitate the preservation of sites, areas, and structures of historical, architectural and aesthetic importance"). What remains of the statute after the excision of the offending classification is obviously independent and complete in itself. Too, it had been enacted prior to the objectionable additions of 1971, and obviously it cannot be said that the legislature would not have passed the statute in the absence of the material which we delete.

For the reasons given, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court for further proceedings in conformity with this opinion.

*Judgments reversed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. This decision demonstrates the validity of Mr. Justice Frankfurter's comment that "*** use of legislative history must not swallow the legislation so as to give point to the quip that only when legislative history is doubtful do you go to the statute." (Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 543.) In my opinion the explicit provisions of section 11—13—1 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—1) require affirmance of the judgment of the appellate and circuit courts.

The majority concludes "that there was no legislative intent to limit the power to establish setback lines to within the boundaries of the municipality" and that the clearly stated limitation contained in section 11—14—1 (Ill. Rev. Stat. 1973, ch. 24, par. 11—14—1), incorporated by reference in 11—13—1, was intended "to give existing users the same protection under 11—13—1 as they enjoyed under 11—14—1 by in effect incorporating from section 11—14—1 the statement that:

" '*** The powers given by this Division 14 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted.' " (Slip opinion, page 4.)

This is difficult to understand in view of the fact that section 11—13—1 provides:

"In all ordinances passed under the authority of this Division 13, due allowance shall be made for existing conditions, ***. The powers conferred by this Division 13 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted, ***."

An examination of the statutes shows that it was clearly the legislative intent that the power to establish setback lines be exercised only within the boundaries of the municipality. Section 11—13—1 provides that corporate authorities have the following powers:

"(1) To regulate and limit the height and bulk of buildings hereafter to be erected; (2) to establish, regulate and limit, subject to the provisions of Division 14 of this Article 11, the building or set-back lines on or along any street, traffic-way, drive, parkway or storm or floodwater runoff channel or basin; (3) to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings; (4) to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential, and other uses; (5) to divide the entire municipality into districts of such number, shape, area, and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes of this Division 13; (6) to fix standards to which buildings or structures therein shall conform; (7) to prohibit uses, buildings, or structures incompatible with the character of such districts; (8) to prevent additions to and alteration or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations lawfully imposed under this Division 13; and

(9) to classify, to regulate and restrict the use of property on the basis of family relationship, which family relationship may be defined as one or more persons each related to the other by blood, marriage or adoption and maintaining a common household.

The powers enumerated may be exercised within the corporate limits or within contiguous territory not more than one and one-half miles beyond the corporate limits and not included within any municipality."

Section 11—14—1 provides:

"In addition to existing powers and to the end that adequate light, pure air, or safety may be secured and that congestion of public streets may be lessened or avoided, the corporate authorities in each municipality have power by ordinance to establish, regulate, and limit the building or set-back lines on or along any street, traffic way, drive, or parkway or storm or floodwater runoff channel within the municipality, as may be deemed best suited to carry out these purposes. The powers given by this Division 14 shall not be exercised so as to deprive the owner of any existing property of its use of maintenance for the purpose to which it is then lawfully devoted."

Only with respect to setback lines did the General Assembly provide that the power granted was subject to 11—14—1. I submit that no amount of legislative history will serve to create an ambiguity in these explicitly stated statutory provisions.

Further, the majority, as "a question introduced by the City in rebuttal during oral argument", holds that the provision of section 11—13—1 that "This amendatory Act of 1971 does not apply to any municipality which is a home-rule unit" creates "an unconstitutional classification and is void." Slip opinion page 5.

We have previously held that under the doctrine of legislative supremacy over municipal corporations a municipal corporation may not assert the protection of the due process clause against the action of the State government (*Supervisors of the County of Boone v. Village of Rainbow Gardens,* 14 Ill.2d 504), and that a municipal corporation has no standing to challenge legislative enact-

ments on the ground that they result in an unreasonable classification. (*Meador v. City of Salem,* 51 Ill.2d 572.) I have searched in vain for any authority that supports the conclusion of the majority, reached apparently without consideration of our prior decisions and with no attempt made to distinguish them or suggest that they are overruled.