ILLINOIS WINE & SPIRITS COMPANY, Plaintiff-Appellant, v. THE COUNTY OF COOK, Bureau of Administration, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—87—3567

Opinion filed November 27, 1989.—Rehearing denied January 2, 1990.

Morton Siegel, Michael A. Moses, and James L. Webster, all of Siegel, Moses & Schoendstadt, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Susan Condon and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Illinois Wine & Spirits Co., appeals from an order granting judgment in favor of defendants, the County of Cook, Bureau of Administration, and William M. Doyle, assessing a tax liability against plaintiff. Plaintiff raises constitutional issues concerning the Cook County Retail Sale of Alcoholic Beverages Tax §§13–95 to 13–105 (1975). We address the issues of whether the tax ordinance as applied to plaintiff, an out-of-county wholesaler, is an occupation tax, violates equal protection, and is an extraterritorial application of the tax. For the following reasons, we affirm.

Plaintiff filed a three-count complaint, as amended, for declaratory and injunctive relief against defendants alleging the following facts. Plaintiff was a wholesale dealer of alcoholic beverages located in Will County, Illinois, and received written notice from defendants of a tax liability under the ordinance. The tax liability including interest was $103,381.55 for the period from January 1, 1976, through December 31, 1978. Plaintiff filed a written protest of the tax. Plaintiff alleged that the tax was unconstitutional because it was an occupation tax, it violated equal protection, and it was an extraterritorial application of Cook County's taxing power.

Defendants answered the complaint denying the material allegations and filed a counterclaim for the tax liability. Defendants alleged that plaintiff sold alcoholic beverages at wholesale to 15 different retail dealers in Cook County from 1976 to 1978. The tax due on plaintiff's sales of alcoholic beverages to retailers doing business in the county was $47,468.16 and the interest on that amount was $55,913.39. Plaintiff refused to pay. In their counterclaim, defendants sought judgment against plaintiff for the tax due plus interest.

Plaintiff answered the counterclaim denying the material allegations.

Plaintiff moved for summary judgment, arguing that the tax was

an unconstitutional occupation tax, violated equal protection, and was an extraterritorial application of the county's taxing power. Defendant filed a cross-motion for summary judgment on the same issues.

The trial court denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment. The case was continued to determine the amount of plaintiff's tax liability. Following a trial, the court entered judgment in defendants' favor in the amount of $154,729.12 for tax and interest. Plaintiff's motion for reconsideration was denied and it now appeals.

OPINION

The Illinois Constitution of 1970 established home rule units of local government, and their powers are explained in this manner: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

Cook County passed the ordinance in question pursuant to its home rule powers. The ordinance imposed a tax on the retail sale of alcoholic beverages occurring in the county. Alcoholic beverages were taxed by the gallon at various rates depending on the type of alcoholic beverage. The ordinance recited, "The ultimate incidence of and liability for payment of the tax herein levied to be borne by the consumer of said alcoholic beverages." (Cook County Retail Sale of Alcoholic Beverages Tax §13—95 (1975).) Each wholesale dealer of alcoholic beverages was required to collect the tax when it sold alcoholic beverages to a retail dealer doing business in Cook County. The retail dealer was required to collect the tax from the consumers of alcoholic beverages. A wholesale dealer was defined as "[a]ny person who engages in the business of selling or supplying alcoholic beverages to any person for resale in the County of Cook." (Cook County Retail Sale of Alcoholic Beverages Tax §13—103(d).) Wholesale dealers were required to register with the county, file monthly reports of sales of alcoholic beverages, and remit the tax applicable to the sales. Violations of the ordinance could incur a fine between $100 and $1,000, and/or imprisonment up to six months. In addition, the county could institute civil proceedings to recover the tax due plus interest, penalty, and costs. Cook County Retail Sale of Alcoholic Beverages Tax §§13—95 to 13—105 (1975).

■ An ordinance carries a presumption of constitutionality, and the burden of overcoming that presumption rests on the party chal-

lenging the ordinance. *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6.

# I

■ Initially, plaintiff argues that the county ordinance imposes an occupation tax in violation of article VII, section 6(e), of the Illinois Constitution of 1970, which provides:

> "A home rule unit shall have only the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." (Ill. Const. 1970, art. VII, §6(e).)

As a home rule unit, Cook County would require approval from the General Assembly to impose a tax on occupations. *Mulligan*, 61 Ill. 2d 544, 338 N.E.2d 6.

Plaintiff concedes that our supreme court has previously reviewed the ordinance involved in the present appeal and found that it did not impose an unconstitutional occupation tax. (See *Mulligan*, 61 Ill. 2d 544, 338 N.E.2d 6.) In *Mulligan*, plaintiffs, who included wholesale dealers of alcoholic beverages, argued, among other issues, that the ordinance was a tax on occupations and, as a home rule unit, the county did not have the power to enact such a tax without authorization from the General Assembly. Plaintiffs argued that as a result, the ordinance was unconstitutional under article VII, section 6(e), of the Illinois Constitution of 1970. The court found, however, that the ordinance did not impose an unconstitutional occupation tax because the tax was levied on retail sales and paid by the consumer.

Despite recognizing the holding in *Mulligan*, plaintiff argues that because it never collected the tax from the retail dealers, requiring plaintiff to pay the tax would have the "practical effect" of imposing the tax on the wholesale dealer rather than the consumer of alcoholic beverages as the ordinance provides.

In support of this argument, plaintiff relies on *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227, where the supreme court considered a constitutional challenge to a Chicago ordinance imposing a tax on services. The ordinance stated the tax was imposed on the purchaser but the collection and remittance duties were placed on the seller, who was also liable for the uncollected taxes. The court examined the "practical operation and effect" of the tax and found that even though the ordinance stated the legal incidence of the tax was on the purchaser, the legal obligation was placed on the seller of service, and therefore, it was an occupation tax. (*Commercial*, 89 Ill. 2d at 65, 432 N.E.2d at 236.) The ser-

vice tax ordinance attempted to convert an occupation tax into a tax on consumers merely by stating that the tax was to be paid by the consumer.

Plaintiff contends that *Commercial* involved a similar situation to the one presented and this court should similarly find the ordinance is unconstitutional. However, plaintiff's reliance on *Commercial* is misplaced. The court in *Commercial* used a practical-effect analysis to determine whether the service tax was constitutional because the delegates to the 1970 constitutional convention intended that such a tax was to be outside the scope of home rule unit powers. The court examined the constitutional debates and found that the intention to restrict home rule units from imposing an occupation tax encompassed the taxing of services. The court specifically distinguished from its analysis taxes which the delegates considered within a home rule unit's power, such as a tax on liquor which is involved in the present case. Citing *Mulligan* and other previous decisions where the power of a home rule unit to impose certain taxes was upheld, the court distinguished them from the service tax under review because they "[fell] within the area of taxation which the debates and the examples [in the report of the Local Government Committee of the Convention] show were understood by the convention to be encompassed within the power 'to tax.' " (*Commercial*, 89 Ill. 2d at 58, 432 N.E.2d at 233.) Accordingly, the practical-effect analysis of *Commercial* is not applicable to the present case. See also *Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 519 N.E.2d 447; *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 528 N.E.2d 978 (Ryan, J., specially concurring).

Plaintiff has not met its burden in overcoming the presumption of constitutionality of the ordinance. Following *Mulligan*, we find the tax in question was imposed on the purchaser of alcoholic beverages and was not an occupation tax.

## II

■ Plaintiff also argues that the enforcement of the tax against it violates equal protection under the United States Constitution (U.S. Const., amend. XIV) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2).

The United States Supreme Court explained violations of equal protection in the application of laws in this manner:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and unequal hand, so as practically to make

unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." (*Yick Wo v. Hopkins* (1886), 118 U.S. 356, 373-74, 30 L. Ed. 220, 227, 6 S. Ct. 1064, 1072-73.)

Equal protection requires that laws are applied in a "rational and nonarbitrary way." (*Ciechon v. City of Chicago* (1982), 686 F.2d 511, 522.) The application of laws must not constitute "intentional invidious discrimination *** against persons similarly situated." *Ciechon*, 686 F.2d at 522-23.

Plaintiff argues that wholesale dealers and retail dealers are similarly situated as collectors of the tax under the ordinance. Therefore, the county's enforcement of the tax against plaintiff, rather than the retail dealers it sold liquor to, is an arbitrary and irrational application of the ordinance and is a denial of equal protection.

Plaintiff relies on *Ciechon* (686 F.2d 511), which involved two paramedics, working as a team, who responded to an emergency call and examined a patient. The patient died shortly after the paramedics left. The patient's family complained to the city that the paramedics gave improper treatment. They also contacted a local television station. The city investigated the complaint, and one paramedic was subsequently discharged. That paramedic brought a civil rights action against the city alleging a denial of equal protection. Judgment was entered in favor of the paramedic. On review, the court found the paramedic was denied equal protection because the city acted in an arbitrary, irrational manner. Both paramedics were equally responsible for the treatment of patients and, therefore, similarly situated. Yet only one paramedic was singled out for discipline, apparently in response to negative publicity. The court found that "[t]here was no possible justification for treating them differently." (*Ciechon*, 686 F.2d at 523.) The evidence showed the discrimination was intentional, and therefore, equal protection was violated.

Initially, we are not persuaded by plaintiff's argument that it is similarly situated with the 15 retail dealers. A review of the ordinance reveals that the primary collection duties were placed on the wholesaler. In section 13—95, the ordinance states, "the tax herein levied shall be collected by each wholesale dealer of alcoholic beverages who sells alcoholic beverages to a retail dealer of alcoholic beverages doing business in Cook County." (Cook County Retail Sale of Alcoholic Beverages Tax §13—95 (1975).) Further, section 13—95 explains that the retail dealer must then collect the tax from the purchaser. Section 13—96 requires that all wholesale dealers doing business in the county

to register with the county and file a report of sales each month accompanied by the tax collected on those sales. Cook County Retail Sale of Alcoholic Beverages Tax §13—96 (1975).

Plaintiff argues that the retail dealer has equivalent collection duties as the wholesale dealer relying on section 13—95 of the ordinance, which provides that if the retail dealer obtains liquor on which no tax was collected by the "distributor or supplier," then the retail dealer must submit the tax directly to the county. Cook County Retail Sale of Alcoholic Beverages Tax §13—95 (1975).

Unlike the paramedics in *Ciechon*, plaintiff and the 15 retail dealers did not share equal responsibilities. Although both the wholesale dealer and the retail dealer have collection duties under the ordinance, the primary responsibility is placed on the wholesale dealer as evidenced by the requirement that the wholesale dealer register with the county, collect the tax, file monthly reports, and remit the tax. Only when the retailer receives liquor from a distributor or supplier on which the tax was not paid does its duty come into play under section 13—95. Under the ordinance, wholesale and retail dealers were not placed in the same class, and therefore, plaintiff cannot claim he was denied equal protection as a result of disparate treatment between wholesale and retail dealers.

Further, plaintiff has not set forth any evidence of invidious discrimination. Plaintiff argues the alleged disparate treatment occurred because the county could have proceeded against the 15 retailers and because plaintiff challenged the county's right to inspect its books in previous litigation (see *County of Cook v. Illinois Wine & Spirits Co.* (1981), 93 Ill. App. 3d 710, 417 N.E.2d 812). However, unlike *Ciechon*, there is no factual evidence to support plaintiff's claim that the county acted with intentional and purposeful discrimination. Accordingly, plaintiff was not denied equal protection.

### III

Lastly, plaintiff argues that the county's imposition of collection duties on it, an out-of-county wholesale dealer, amounts to an unconstitutional extraterritorial application of the tax.

■ Although "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including *** the power *** to tax" (Ill. Const. 1970, art. VII, §6(a)), our supreme court has found that home rule units do not have extraterritorial governmental powers. (*City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19.) A home rule unit can only act outside its territory when it has the approval of the legislature. *Van Natta*, 61

Ill. 2d 483, 338 N.E.2d 19.

In *Mulligan* (61 Ill. 2d 544, 338 N.E.2d 6), which was discussed earlier, plaintiffs, who included wholesale dealers of alcoholic beverages, challenged the constitutionality of the ordinance. Similar to plaintiff in the present case, plaintiffs in *Mulligan* argued that as a home rule unit the county could not require wholesale dealers located outside the county to collect the tax because it was acting extraterritorially. The Illinois Supreme Court disagreed and stated:

"But the crucial inquiry is *** whether any local unit of government is exercising its taxing power extraterritorially by collecting a tax from sellers located outside the boundaries of the local unit which do business within those boundaries. We think it is not. An ordinance is presumed valid, and the burden of establishing invalidity rests upon those asserting it; that burden has not been met in this case. Perhaps factual situations may be hypothesized in which enforcement of this ordinance as to out-of-county wholesalers would raise substantial constitutional questions. Those facts are not presented here, and we may not assume that enforcement of the ordinance will be attempted under circumstances which would constitute an extraterritorial exercise of taxing power." (*Mulligan*, 61 Ill. 2d at 558, 338 N.E.2d at 15.)

Subsequent to *Mulligan*, the supreme court decided *Commercial* (89 Ill. 2d 45, 432 N.E.2d 227), which involved the constitutionality of an ordinance imposing a service tax. The ordinance taxed the total value of services when they were "substantially performed" in the city although some portion of the services were performed outside the city. (*Commercial*, 89 Ill. 2d at 76, 432 N.E.2d at 242, *quoting* Municipal Code of Chicago §200.5—3 (1981).) The court struck down the ordinance, finding it exceeded the territorial limits of home rule units because it taxed services performed outside the city. The court distinguished the tax involved in *Mulligan* and stated:

"It was the sale of alcoholic beverages *within the county* which was being taxed [in *Mulligan*]. We indicated there that it was not an extraterritorial exercise of home rule powers to impose tax-collection duties upon a nonresident wholesaler who did business within the county. *** In all our previous decisions on the home rule units' taxing power, the commodities or services taxed were purchased or used within the territorial limits of the taxing entity." (Emphasis in original.) *Commercial*, 89 Ill. 2d at 78, 432 N.E.2d at 243.

As stated in *Mulligan* and *Commercial*, the ordinance involved

here placed a tax on the retail sale of alcoholic beverages occurring within the county. The tax is imposed on the consumer. The right of the county to impose collection duties on an out-of-county wholesaler doing business in the county was approved in *Mulligan*. The court in *Mulligan* noted that in some instances, enforcement against out-of-county wholesale dealers could raise "substantial constitutional questions." (*Mulligan*, 61 Ill. 2d at 558, 338 N.E.2d at 15.) The present case does not involve an unconstitutional enforcement of the ordinance.

■ Plaintiff argues it does not conduct business within the county because it does not maintain an office, have a telephone line, or advertise in the county. Also, plaintiff did not apply for a license within the county or file a tax return with the county. These factual assertions were made with no more support in the record than plaintiff's "Memorandum of Issues" and motion for summary judgment filed in the trial court. Further, plaintiff cites the deposition testimony of two retail dealers who testified that they purchased liquor from plaintiff only a few times and one retail dealer could not remember dealing with plaintiff at all. Such testimony is clearly irrelevant in light of the fact that plaintiff does not challenge the amount of the tax liability assessed against it.

Contrary to plaintiff's claim, it is clear from the record that from 1976 through 1978 plaintiff conducted business within the county when it supplied 15 different retail dealers with wholesale alcoholic beverages for retail sale within the county. Plaintiff's sales resulted in a tax liability of approximately $45,000. Accordingly, plaintiff's argument that it did not conduct business in the county is without support in the record. The county has not exercised extraterritorial powers in enforcing the tax against plaintiff.

Affirmed.

PINCHAM and COCCIA, JJ., concur.