MR. B'S, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—97—2149, 1—97—2279 cons.

Opinion filed December 28, 1998.

John W. Moore, of Chicago, for appellants.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Sonja A. Rajovich, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

The instant appeal is brought under Supreme Court Rule 301 (155 Ill. 2d R. 301) from a grant of summary judgment in favor of defendants-appellees in plaintiffs-appellants' action for declaratory and injunctive relief, holding that the City of Chicago's amended amusement tax ordinance is constitutional. In an order dated August 27, 1997, we granted appellants' motion to consolidate the appeal under docket number 1—97—2279 with an earlier appeal under docket number 1—97—2149, which was premature as the circuit court had not yet rendered final judgment.

The amended amusement tax ordinance at issue in this case provides that the price that resellers of tickets receive above the face value of the tickets is subject to the 7% amusement tax. Appellants contend that the amendment to the tax ordinance is an unconstitutional service or occupation tax. Appellants alternatively argue that the city's amended amusement tax is an unconstitutional extraterritorial exercise of its home rule authority when applied to ticket brokers located outside the City of Chicago.

On cross-motions for summary judgment below, the court ruled that the tax was constitutional because there was a specific grant of authority from the legislature. The court below also ruled that there is no unconstitutional extraterritorial application of the tax. For the reasons that follow, we affirm the court's order as to the issue of constitutionality, but reverse and remand on the issue of territoriality.

On November 15, 1995, the City of Chicago passed an ordinance that applied its existing amusement tax to the charges that ticket brokers charge on the resale of sports and entertainment tickets, effective January 1, 1996. Chicago Municipal Code § 4—156—020(F) (amended November 15, 1995). Appellants are ticket brokers who are registered with the Secretary of State pursuant to the Illinois Ticket Scalping Act (720 ILCS 375/1 *et seq.* (West 1994)). Ticket brokers purchase tickets from members of the general public wishing to sell tickets for events, and sell these tickets to travel agents, hotel and club concierges, corporate entertainment departments, and members of the general public.

The only information we can glean from the record regarding the location of each of the appellants is the following. Mr. B's, Inc. (Mr. B's), has its principal place of business in Skokie, Illinois. A.B. Associates, Ltd. (A.B.), operates business under the corporate name of "Tickets & Company," and its principal place of business is in Hoffman Estates, Illinois. Center Stage Ticket Service, Inc. (CSTS), has its principal place of business in Chicago, Illinois. Central States Ticket Brokers Association (CSTB Association) is a not-for-profit organization whose members are business entities engaged in ticket brokering. The evidence in the record regarding where each of the appellants transacts its business is incomplete. However, it is clear that each appellant in this case sells tickets for Chicago events. Appellants do not operate any of the venues where the events take place and are not in contractual privity with any of the venues.

Mr. B.'s, A.B., CSTS, and CSTB Association filed the instant action for declaratory judgment and injunctive relief on January 10, 1996. The parties cross-motioned for summary judgment, and the court granted summary judgment in favor of the city.

■ A circuit court's grant of summary judgment is reviewed *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). When all parties file cross-motions for summary judgment, the court is invited to decide the issues presented as a question of law. *Container Corp. v. Wagner*, 293 Ill. App. 3d 1089, 1091 (1997).

■ Appellants first argue that the amendment to the City of Chicago amusement tax ordinance constitutes an unauthorized occupation tax in violation of article VII, section 6(e), of the Illinois Constitution of 1970, which provides:

"(e) A home rule unit shall have only the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, § 6(e)(2).

Absent specific authorization from the General Assembly, a home rule unit may not impose a tax upon an occupation or income. *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45, 51 (1982).

The amendment to chapter 4—156 of the Chicago Municipal Code added resellers of tickets to the category of people who are subject to the 7% amusement tax under section 4—156—020:

"F. It is unlawful for any person to produce, present, conduct, or resell tickets to, any amusement without collection of the tax, except as provided in this article." (Underlined language inserted by the amendment.) Chicago Municipal Code § 4—156—020(F) (amended November 15, 1995).

The amendment also added resellers of tickets to the provisions for collecting and remitting the taxes to the city:

"A. It shall be the duty of every owner, manager or operator of an amusement or of a place where an amusement is being held, and of every reseller of tickets to an amusement, to secure from each patron the tax imposed by Section 4—156—020 of this article and to remit the tax to the department of revenue not later than the last day of each calendar month for all admission fees or other charges received during the immediately preceding calendar month ***. A verified statement of admission fees or charges in a form prescribed by the director of revenue shall accompany each remittance. Acceptance by the city of any amount tendered in payment of the tax shall be without prejudice to any claim, demand or right on account of any deficiency.

B. Every person required to collect and remit the tax imposed by

Section 4—156—020 of this article, or pay the tax directly to the department, shall keep accurate books and records of its business or activity, including original source documents and books of entry denoting the transaction that gave rise, or may have given rise, to the tax liability or any exemption that may be claimed. All such books, records and accounts shall be available for inspection by the department at all reasonable times during business hours of the day.

C. Every owner, manager, operator, or reseller of tickets, who is required to collect the tax imposed by Section 4—156—020 of this article shall be considered a tax collector for the city. All amusement tax collected shall be held by such tax collector as trustee for and on behalf of the city. The failure of the tax collector to collect the tax shall not excuse or release the patron from the obligation to pay the tax." (Underlined language inserted by the amendment.) Chicago Municipal Code §§ 4—156—030(A) through (C) (amended November 15, 1995).

Also, in passing this amendment, the Chicago city council made a legislative finding that "the full price of admission to amusements should be subject to the amusement tax, even if an admission ticket is sold by a ticket broker or other reseller of tickets." Chicago City Council Journal 12014 (November 15, 1995).

Appellants argue that the amusement tax ordinance is an unconstitutional occupation tax because they provide services in selling tickets to their clients, such as obtaining the tickets, sometimes through great effort, as well as showing the clients seating charts. The city, on the other hand, argues that the substance of the transaction is the purchase of an admission ticket to an amusement and that the ticket brokers' services in selling tickets to patrons is only incidental.

■ An occupational tax is one that in practical effect imposes a tax upon a given occupation or the provider of particular services. *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1, 10 (1988); *Communications & Cable of Chicago, Inc. v. City of Chicago*, 282 Ill. App. 3d 1038, 1044 (1996). "Services" has been broadly defined as including all "sales" transactions other than sales of tangible property. *Waukegan Community Unit School District No. 60 v. City of Waukegan*, 95 Ill. 2d 244, 254 (1983). In contrast, a sales tax is commonly understood to be a tax on the sale of tangible personal property. *Springfield Hotel-Motel Ass'n v. City of Springfield*, 119 Ill. App. 3d 753, 759 (1983).

■ The standard of review for sales taxes and occupation taxes differs, with occupation taxes being more closely scrutinized. "A tax on tangible personal property is not an occupation tax so long as the ordinance enacting it declares that its legal incidence falls on the purchaser, rather than the seller." *Archer Daniels Midland Co. v. City*

*of Chicago*, 294 Ill. App. 3d 186, 191 (1997). Meanwhile, where a tax is alleged to be a tax on services, or occupation tax, a legislative declaration of its legal incidence, standing alone, is not determinative in analyzing whether a home rule tax is an occupation tax under section 6(e) of the Illinois Constitution. *Commercial National Bank*, 89 Ill. 2d at 64-65; *Waukegan School District*, 95 Ill. 2d at 254-55. Rather, a court of review must look to the legislation's "practical operation and effect" in determining the nature of the tax. *Commercial National Bank*, 89 Ill. 2d at 65. "The mere recitation in the ordinance that the tax is upon purchasers of services does not eliminate the evils the delegates to the convention sought to prevent." *Commercial National Bank*, 89 Ill. 2d at 67.

■ Here, Chicago's amended amusement tax ordinance, as applied to ticket brokers, constitutes a sales transaction of a tangible good. When tangible goods or items are provided in conjunction with services, courts examine "the totality of the transaction to determine its taxability." *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680, 685 (1995). Where the item sold is the substance of the transaction, and the service or skill provided is merely incidental, the transaction is one for tangible personal property. See *Commonwealth Edison Co. v. Department of Revenue*, 179 Ill. App. 3d 968, 973 (1989); *Katz v. City of Chicago*, 177 Ill. App. 3d 305, 308-09 (1988).

Here, the main substance of the transactions between ticket brokers and their patrons is the purchase of a ticket. The services that the ticket brokers provide are incidental to the sale of the ticket. The price of the ticket does not change depending on the amount of effort expended in obtaining particular tickets. Rather, as the ticket brokers have admitted, the price of the tickets is determined solely by market forces. This fact does not transform the transaction from a sale to a service.

In *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491 (1979), relied upon by the city, the Illinois Supreme Court held that a tax of 2% on the price of admission to amusements was not a tax on occupations. *Kerasotes*, 77 Ill. 2d at 500. The court relied on the fact that the incidence of the tax was specifically placed on the consumer, notwithstanding the fact that collection duties were placed on the operators of the amusements. *Kerasotes*, 77 Ill. 2d at 500. *Commercial National Bank*, 89 Ill. 2d at 59. *Kerasotes* is dispositive of the instant case. We take note that the amusement tax in *Kerasotes* was applied to operators of movie theaters who, like the ticket brokers in the instant case, sell tickets for an amusement, and the Illinois Supreme Court held that the amusement tax was not an occupational tax. The court

below correctly ruled that the substance of the transaction is the purchase of an admission ticket and that any other services rendered are only incidental.

Moreover, the intent of the legislature is that amusement taxes are not to be considered as an occupational tax. The distinction drawn between service or occupational taxes and sales taxes is determined by analyzing whether the tax is the type of tax intended by the constitutional convention to fall under a home rule unit's broad home rule powers under article VII, section 6(a). The rationale in this analysis is clearly set forth at length in *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45 (1982). The intent evidenced by the constitutional convention debates is that "service" taxes be scrutinized more carefully as a possible attempt to evade the proscription in article VII, section 6(e), of the Illinois Constitution against income or occupation taxes without authorization by the General Assembly. *Commercial National Bank*, 89 Ill. 2d at 57. Thus, the ostensible purpose of prohibiting home rule units from imposing "occupation" taxes that are not expressly authorized by statute was to prevent those units from evading the constitutional restriction on income taxes by labeling such taxes "occupation" taxes. *Picur*, 124 Ill. 2d at 10. Meanwhile, other taxes that the constitutional convention considered to be within the permissible home rule power to tax need not be subjected to such close scrutiny. *Commercial National Bank*, 89 Ill. 2d at 58-59.

The report of the local government committee of the constitutional convention set forth several examples of permissible home rule taxes, such as taxes on gasoline, hotel rooms, liquor, food, drugs, etc., which were considered by the convention to be appropriate home rule taxes. 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1655-56; see also *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 400 (1988).

Thus, the tax ordinances in cases such as *Illinois Gasoline*, 119 Ill. 2d 391 (gasoline), *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972) (cigarettes), *Mulligan v. Dunne*, 61 Ill. 2d 544 (1975) (liquor), and *Illinois Wine & Spirits Co. v. County of Cook*, 191 Ill. App. 3d 924 (1989) (liquor), were all upheld because the items taxed were clearly contemplated to be within the home rule power.

Contrary to appellants' argument, amusement taxes are within the category of items that the constitutional convention deemed to fall clearly within home rule powers. In *Commercial National Bank*, the Illinois Supreme Court cited *Kerasotes* approvingly as standing for the proposition that an amusement tax is within the scope of the examples set out by the constitutional convention as permissible home rule unit taxes.

Plaintiffs assert that tickets to amusements and sporting events are not tangible property, citing *Soderholm v. Chicago National League Ball Club, Inc.*, 225 Ill. App. 3d 119 (1992), *appeal denied* 145 Ill. 2d 644 (1992). Plaintiffs argue that because tickets are property other than tangible personal property, the tax on their resale is a service tax and, accordingly, unconstitutional.

The trial court correctly rejected this argument. As the trial court noted, the sole issue in *Soderholm* was whether the purchase of Cubs game season tickets from 1985 through 1990 gave the plaintiffs an option to purchase season tickets for the 1991 season. This court in *Soderholm* did not conclude that tickets are not tangible personal property; rather, this court addressed the issue of whether a season ticket is a license that permits the holder to enter a ball park subject to its terms and conditions. Thus, *Soderholm* does not stand for the proposition that all tickets are licenses.

The tickets in this case are tangible personal property, and therefore Chicago's amended amusement tax ordinance does not constitute an occupational or service tax.

Another basis for affirming the decision of the trial court is that there is specific authorization from the General Assembly for the amusement tax. Absent specific authorization from the Illinois General Assembly, a home rule unit may not impose a tax upon an occupation or upon income. See *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45, 50 (1982).

In ruling on the cross-motions for summary judgment, the trial court held that the amended amusement tax was authorized by section 11—42—5 of the Illinois Municipal Code (65 ILCS 5/11—42—5 (West 1994)). Section 11—42—5 provides the following:

"§ 11—42—5. The corporate authorities of each municipality may license, tax, regulate, or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants, transient vendors of merchandise, theatricals and other exhibitions, shows, and amusements and may license, tax, and regulate all places for eating or amusement." 65 ILCS 5/11—42—5 (West 1994).

An issue here arises as to whether the court relied on the appropriate section in its ruling. Arguably, this section applies to the ticket brokers. *Communications & Cable*, 282 Ill. App. 3d at 1047-48, held that this section applied to providers of cable services so as to constitute a grant of authority to tax them. However, this section does not constitute as clear a grant of authority to tax ticket brokers, because they are one step removed from providing the actual "amusement."

Section 11—42—1 is a clearer grant of authority to municipalities

to tax ticket brokers than section 11—42—5. Section 11—42—1 provides the following:

> "§ 11—42—1. The corporate authorities of each municipality may license, tax, and regulate auctioneers, private detectives, demolition contractors, money changers, bankers, brokers other than insurance brokers, barbers, and the keepers or owners of lumber yards, lumber storehouses, livery stables, public scales, ice cream parlors, coffee houses, florists, detective agencies, barber shops and *sellers of tickets* for theatricals, shows, amusements, athletic events and other exhibitions at a place other than the theater or location where the theatricals, shows, amusements, athletic events and other exhibitions are given or exhibited." (Emphasis added.) 65 ILCS 5/11—42—1 (West 1994).

This section specifically mentions "sellers of tickets" as being appropriately subject to taxation. While the city argues that the ticket brokers could also be considered "brokers other than insurance brokers," it is clear that the legislature contemplated other brokers such as real estate brokers. The statutory scheme regulating ticket scalpers in the Ticket Scalping Act (720 ILCS 375/1.5(b) (West 1996)) refers to ticket brokers as engaging in the sale of tickets. This description clearly parallels the mention of "sellers of tickets" in section 11—42—1. The Ticket Scalping Act does not refer anywhere to ticket brokers as "brokers." 720 ILCS 375/1 *et seq.* (West 1994). Thus, section 11—42—1 is a clearer grant of authority to tax ticket brokers than section 11—42—5 because it specifically covers ticket sellers. Although the court relied on section 11—42—5, we may affirm the decision of the trial court to grant summary judgment to the city on any basis in the record, regardless of whether the trial court relied on that ground or whether the court's reasoning was correct. *Grot v. First Bank of Schaumburg*, 292 Ill. App. 3d 88, 93 (1997).

Appellants argue, nevertheless, that section 11—42—1 does not authorize the amusement tax as applied to them because they are not sellers but, rather, resellers. We do not find this semantic argument persuasive. The amended amusement tax ordinance is structured so that the tax is collected only once, upon the sale to a patron, whether by a seller or a reseller. Chicago Municipal Code § 4—156—030(A) (amended November 15, 1995). Ticket brokers do not pay the tax when one broker sells to another broker. The tax is paid by the patrons and merely collected by sellers or resellers. Thus, the fact that appellants are resellers of tickets rather than sellers is irrelevant. The tax in the instant case is clearly authorized by section 11—42—1. 65 ILCS 5/11—42—1 (West 1994).

■ Next, appellants argue in the alternative that, if the tax is au-

thorized, it is nevertheless unconstitutional as an extraterritorial exercise of municipal authority.

However, appellants have not provided an adequate record to review this issue. As appellants concede, there was an agreement between the parties in the court below not to present evidence of where the appellants transact business. While the record shows some mention of the agreement, there is no transcript of the agreement in the record and, as such, it does not fully comply with Supreme Court Rule 321. 134 Ill. 2d R. 321.

The trial court held that the imposition of the tax is limited to events in the city and therefore there is no unconstitutional extraterritorial application of the ordinance. However, the inadequate record leaves a question of material fact as to whether the ticket brokers in this case are being taxed extraterritorially. Thus, pursuant to our power under Supreme Court Rule 366(a)(5), we reverse the portion of the circuit court's ruling as to extraterritoriality and remand only for the purpose of developing the facts necessary for a review of the ordinance's application to appellants. 134 Ill. 2d R. 366. We reject appellants' facial challenge to Chicago's ordinance as being unconstitutional.

Thus, the circuit court's grant of summary judgment is affirmed as to the occupational tax issue and as to the court's ruling that Chicago's ordinance is constitutional, but is reversed and remanded for the purpose of resolving the material issue of whether the ordinance is being extraterritorially applied to appellants.

Affirmed in part; reversed and remanded in part.

BUCKLEY and ZWICK, JJ., concur.